**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Wansdown Properties Corporation N.V. | ) | Case No. 19-_____ ( ) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**AFFIDAVIT PURSUANT TO LOCAL RULE 1007-2**

STATE OF NEW YORK    )
                                        ) ss:
COUNTY OF NEW YORK  )

I, Gholam Reza Golsorkhi, being duly sworn, deposes and says:

1. I am sole managing director and president of Wansdown Properties Corporation N.V. (the "Debtor") and am fully familiar with the facts set forth herein. All facts set forth in this affidavit are based upon my personal knowledge of the Debtor's business and related financial information gathered from my review of the Debtor's books and records. If called to testify, I could and would testify competently to the facts set forth in this declaration.

## BACKGROUND

2. The Debtor was incorporated in 1979 under the laws of Curacao, in accordance with Article 38 of the Commercial Code of the Netherlands Antilles and continues to exist under the laws of the Netherland Antilles.

3. I was named as a managing director of the Debtor in 1979.

4. The Debtor's primary asset is a seven-story townhouse located at 29 Beekman Place, New York, New York (the "Town House").

**Litigation with Ms. Azari & the Scheduled Sheriff's Sale**

5. In 2014, the Debtor decided to sell the Townhouse and listed it for sale. Due to the then existing market conditions, the listing was terminated and the Townhouse removed from the market.

6. As late as 2016, the Debtor still had several employees, including Ms. Azari.

7. At that time, Ms. Azari was earning $9,000 a month for her services. In an effort to maintain the high standard of living that her paycheck from the Debtor provided, Ms. Azari sought to secure a commitment from the Debtor to continue paying her even though her services were no longer needed.

8. On April 21, 2016, the Clerk of the New York Supreme Court for the County of New York (the "State Court") entered a judgment in favor of Ms. Azari and against the Debtor in the principal amount of $2.7 million, based on a confession of judgment.

9. On February 13, 2017, the Debtor commenced a plenary action seeking to vacate the judgment by filing a complaint (the "Complaint") in the State Court.

10. On April 3, 2017, Ms. Azari moved to dismiss the Complaint. Following oral argument, on October 17, 2017, the State Court issued a ruling denying the motion. Ms. Azari appealed.

11. On October 23, 2018, the Supreme Court, Appellate Division, reversed the State Court decision and entered a judgment against the Debtor. In its decision, the appellate court found that I had the authority to execute the confession of judgment on behalf of the Debtor and, as such, the judgment was proper.

12. On July 8, 2019, Ms. Azari sought to enforce the judgment through a writ of execution.

13. A sheriff's sale with respect to the Town House is scheduled for October 9, 2019, at 11:00 a.m.

14. The Debtor believes that the Judgment is far in excess of the amount due Ms. Azari and entry of the judgment constitutes a fraudulent transfer.

**Prepetition Marketing Efforts and Objectives of the Sale Process**

15. This case has been commenced by the Debtor to protect its sole asset – the Town House – and to sell it in an organized sale process, and not a fire sale, so that the Debtor will maximize its value.

16. In early 2019, the Debtor retained Charlie Attias, a licensed real-estate broker, at the Corcoran Group, to market and sell the property. Mr. Attias was hired based upon his experience selling similar town houses and his international background.[1]

17. Given that the Town House is situated near the United Nations, the Town House was marketed to wealthy internationals and foreign governments, as potential embassy space. Several embassies viewed the Town House, but none made an offer. Ultimately, one buyer made an offer for $17 million, but the sale never closed and the purchaser created a cloud on title.

18. In April 2019, Mr. Attias re-listed the Town House for $17,995,000. In or around September 2019, Mr. Attias left Corcoran and being working at Compass. After joining Compass, Mr. Attias used Compass's resources to market the Town House. As a result of this process, the Town House garnered interest from a number of potential buyers. Ultimately, however, the Debtor received one binding offer, which came from 29 Beekman Corp. ("29 Beekman"), a New York Corporation, in the amount of $10,300,000. After reviewing the offer and an arms' length negotiation, and after considering the length of the marketing process, the Debtor determined that 29 Beekman's offer was the highest and best offer it could receive for the Town House.

19. Thereafter, the Debtor, in consultation with its advisors, negotiated, at arms' length, a residential sale agreement ("RSA") with 29 Beekman.

20. Under the RSA, the parties have agreed that the consummation of the transactions contemplated in the RSA is subject to the Debtor's receipt of requisite authority under the Bankruptcy

---

[1] https://streeteasy.com/cattias

999998.03373/121957964v.5

Code pursuant to, among other things, the entry of an order confirming a chapter 11 plan, or if not possible, then an order approving a sale of the property under section 363 of the Bankruptcy Code. The closing of the transactions contemplated in RSA are scheduled to take place no later than the forty-five (45) days after the entry of an order confirming a chapter 11 plan.

21. As set forth above, the Debtor has determined that value will be maximized by commencing this case and seeking court approval of the transactions contemplated in the RSA.

**Other Financial Information**

22. The Secured Creditors of the Debtor are as listed on Schedule D to the Petition.

23. A summary of the Debtor's assets and liabilities is set forth on the summary of schedules filed contemporaneously herewith.

24. The names and addresses of the twenty largest unsecured creditors are filed with this Affidavit.

25. All suits or proceedings in which the Debtor is named as a party are listed in the Debtor's Statement of Financial Affairs.

26. No property of the Debtor is in the possession and control of a receiver for the benefit of mortgagees or creditors.

## CONCLUSION

27. The Debtor's ultimate goal in this case is to maximize the value of its estate for the benefit of all stakeholders. A sale of the Town House, through either a chapter 11 plan or a section 363 sale is the best way to accomplish this goal.

28. I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of October, 2019

_____
Gholam Reza Golsorkhi

Subscribed & sworn to before me, this 8th day of October, 2019

_____
EVAN ZUCKER
Notary Public, State of New York
No. 02ZU6201406
Qualified in Nassau County
Commission Expires Feb. 23, 2021