BEYS LISTON & MOBARGHA LLP
Nader Mobargha
Michael P. Beys
641 Lexington Avenue
New York, NY 10022
Tel: (646) 755-3603
Fax: (646) 755-3599
nmobargha@blmllp.com
mbeys@blmllp.com

*Counsel for Secured Creditor Azadeh Nasser Azari*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X
:
:
In re: : **Chapter 11**
:
: **Case No. 19-13223 (SMB)**
:
WANSDOWN PROPERTIES CORPORATION, N.V., :
:
:
:
:
:
Debtor :
:
:
:
:
---------------------------------------------------------------------X

**OBJECTION OF SECURED CREDITOR AZADEH NASSER AZARI TO (i) DEBTOR'S MISREPRESETATIONS AND OMISSIONS IN ITS BANKRUPTCY FILINGS, AND (ii) DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF BLANK ROME LLP AS SPECIAL LITIGATION COUNSEL; AND NOTICE OF HER INTENTION TO SEEK SANCTIONS AND FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 AND 28 U.S.C. § 1927**

1. Secured creditor Azadeh Nasser Azari submits this objection in this Chapter 11 proceeding ("Bankruptcy Proceeding" or "Bankr. Proc.") to: (i) the misrepresentations and omissions in Wansdown Properties Corporation, N.V.'s ("Debtor") bankruptcy filings; and (ii)

1

Blank Rome LLP's application for entry of an order authorizing its retention as "special litigation counsel" to Debtor ("Blank Rome Application").

2. Furthermore, this opposition also serves as notice that, should Debtor attempt to re-litigate Ms. Azari's valid judgment against the Debtor, docketed on April 21, 2016, in *Azadeh Nasser Azari v. Wansdown Properties Corporation, N.V.* Index No. 652137/2016 (the "Azari Judgment" or the "Judgment") for ***a third time,*** Ms. Azari will seek sanctions under Federal Rule of Civil Procedure ("FRCP") 11 and attorney's fees and expenses under 28 U.S.C. § 1927 against both Debtor and its counsel.

## PRELIMINARY STATEMENT

3. Debtor's bankruptcy petition is nothing more than a selection of a new venue for its latest effort to avoid paying Ms. Azari's three and one half year old Judgment. Now Debtor wants to hire Blank Rome, in addition to its bankruptcy counsel, to continue its meritless litigation campaign.

4. However, Debtor's retention of Blank Rome is inappropriate for three reasons: (i) It is not "in the best interest of the estate" or "reasonably likely to benefit Debtor's estate" under sections 327(e) and 330 of Title 11 of the United States Code (the "Bankruptcy Code") since it would unnecessarily deplete the estate; (ii) Debtor admits that it has no income and no money to pay Blank Rome, and fails to disclose any additional "source" of funds under Rule 2016(a) of the Federal Rules of Bankruptcy ("Bankruptcy Rules" or "Bankr. Rule") to pay for Blank Rome's services; and most importantly, (iii) the "Azari Litigation" (as defined in the Blank Rome Application) – the "specified special purpose" for Blank Rome's retention under section 327(e) – is over.

5. For the past two and one half years, Ms. Azari has been forced to litigate the validity of her Judgment under CPLR 3218 and 5015 – the only two bases for vacating a judgment – ***twice*** already, once against the Debtor (*Wansdown vs. Ms. Azari*, 151406/2017)(the "First Action"), and a second time against a beneficiary of Pelmadulla Stiftung, a foundation in Vaduz, Lichtenstein established for the benefit of the late Princess Achraf Pahlavi of Iran and her beneficiaries (the "Foundation")(*Kamran Abbas-Vahid vs. Ms. Azari et al.*, Index No. 655724/2019)(the "Second Action"). The Foundation is the sole shareholder of Wansdown.

6. Both times New York courts found that the Azari Judgment is indisputably valid. On October 23, 2018, the First Department dismissed the First Action. Almost a year later, on October 4, 2019, the Honorable Nancy M. Bannon of the Supreme Court of New York dismissed the Second Action.

7. Nevertheless, Debtor and Gholam Reza Golsorkhi ("Golsorkhi"), Debtor's President and Managing Director, insist that they must retain Blank Rome for its alleged "experience, knowledge, and familiarity with the Azari Litigation." (*See* Bankr. Proc., Dock No. 11, at ¶ 9). In its filings, Debtor even falsely lists four litigations concerning Ms. Azari as "pending." (Bankr. Proc., Dock. No. 13, Official Form 207, Part 3).

8. However, the decisions in the First and Second Action confirm that ***there is no ongoing litigation between Ms. Azari and Debtor***, and consequently, no need for Blank Rome's services as "special litigation counsel." The only "Azari Litigation" remaining is a third-party complaint by Ms. Azari against the Foundation and its board members for the Foundation's failure to pay her a $150,000 bequest that it owed her as a beneficiary under its own By-Laws (the "Third-Party Action"). However, ***Debtor is not a party to this Third-Party Action.*** As

such, there is no need for Blank Rome's "special litigation services" in this Bankruptcy Proceeding concerning that action.

9. Furthermore, if Debtor retains Blank Rome, Debtor's unsecured creditors will suffer an impairment to their claim. That is because Debtor ***admits that it has no funds and no income to pay Blank Rome***. As a result, any payment for Blank Rome's services will mean that Debtor's unsecured creditors will receive less money to satisfy their claims. Debtor provides no other "source" to pay Blank Rome's legal fees, except from the proceeds from the sale of its $10.3 million Town House. Bankr. Rule 2016(a).

10. Just as Blank Rome's retention is unnecessary, so is this entire bankruptcy. Debtor is, in fact, ***solvent***. To justify its bankruptcy, Debtor attempts to make its liabilities appear greater than its assets by falsely listing the ***obligations of the Foundation***, its shareholder, as if they were ***unsecured claims against Debtor***. The Foundation's By-Laws list a number of beneficiaries to the Foundation. Debtor has taken some of the names on that list and added it to its list of unsecured creditors to increase its liabilities. This includes Ms. Azari's $150,000 unsecured claim against the Foundation, as mentioned above. Without these false liabilities, Debtor can pay all of its creditors once it sells its sole asset, the Town House.

11. The true motive behind Debtor's bankruptcy is to re-litigate Ms. Azari's Judgment – ***for a third time*** – again claiming that it was a "fraudulent transfer." Their goal is clear: to hold the financially-strapped Ms. Azari hostage to their frivolous litigation campaign for years to come. Debtor's counsel, Blank Rome confirmed, ***in writing,*** that this is their intention. The First Department and Supreme Court decisions are of no consequence for Debtor or its counsel.

12. However, today, Ms. Azari is a secured creditor with a valid Judgment for $3,542,400, as of October 9, 2019, against the Debtor.¹ The Judgment has accrued, and may continue to accrue, interest by statute and under the Bankruptcy Code. *See* CPLR § 5004; *see also* 11 U.S.C. § 502(b)(the claim and interest are fixed "as of the date of the filing of the petition") & § 506(b)(allowing for post-petition interest for over-secured creditors). None of Debtor's desperate attempts can change this. Consequently, hiring Blank Rome so that Debtor can uselessly challenge this Judgment for a third time will not "benefit [Debtor's] estate" in any way, but rather will deplete it. 11 U.S.C. § 330(a)(4)(A).

## FACTUAL BACKGROUND

13. The following is a brief history of the past litigation between Ms. Azari, Debtor, the Foundation, and a beneficiary of the Foundation, over the validity of her Judgment.

*Secured Creditor Ms. Azari*

14. Ms. Azari is a secured creditor of Wansdown and a 71-year old senior citizen with no income for the past three years. She has a Judgment against Wansdown for $2,7000,000, with interest accruing from April 21, 2016, based on an Affidavit of Confession of Judgment. (Ex. 1 to the Mobargha Declaration ("Mobargha Declaration"), Execution of Judgment (confirming the accrual of interest).² On October 9, 2019, the Judgment was $3,542,400.

15. The Judgment was supposed to be her pension for a life of work and devotion to Princess Achraf Pahlavi, the twin sister of the late Shah of Iran ("the Princess"), who had a substantial fortune. (The Second Action, Dock No. 2, ¶¶ 9-14). She loyally served and worked for Debtor and the Princess for 49 years. (*See id.* at ¶ 3). Debtor admits that it "did not provide

---

¹ Debtor mistakenly lists Ms. Azari's secured claim as only $3,400,000. (*See* Bankr. Proc., Dock. No. 13, pg. 7, Official Form 206D, Part 1).

² All exhibits referenced in this Opposition are attached to the Mobargha Declaration.

any of its employees with ERISA, 401(k) or 403(b), or any other pension or profit-sharing plans." (Bankr. Proc., Dock No. 13, pg. 20, Form 207, Part 9). For Ms. Azari, the Judgment is her only nest egg.

*The First Action*

16. Over two and a half years ago, on February 13, 2017 – after the Princess' death – Debtor filed the First Action against Ms. Azari seeking to vacate the Judgment under CPLR 3218 and CPLR 5015. CPLR 3218 requires affidavits of confession of judgment to comply with certain statutory requirements, and CPLR 5015 allows a court to vacate a judgment on the grounds of "fraud, misrepresentation, or other misconduct by the adverse party." To aid Debtor in its effort to vacate the Judgment and deprive Ms. Azari of her pension, the Foundation, the Debtor's sole shareholder, also submitted an affidavit in the First Action. (*See* First Action, Dock. No. 18).

17. In the First Action, Debtor showed just how far it is willing to go to avoid paying the Judgment. First, Debtor and Golsorkhi alleged that Golsorkhi "is not a native English speaker", and that, as a result, the linguistically challenged Golsorkhi did not understand the plain terms of his own affidavit. (First Action, Dock No. 1, at ¶ 6). This absurd lie was flatly contradicted by Golsorkhi's own online profile, which confirmed that he is a sophisticated individual, fluent in English, with both an undergraduate degree and a Masters of Business Administration from American universities, who also "attended secondary school in the United Kingdom and the United States." (Ex. 2, website printout of Golsorkhi profile for the Foundation of Iranian Studies). A simple review of Golsorkhi's October 8, 2019 affidavit and October 14, 2019 submission in this Bankruptcy Proceeding also confirms his mastery of English. (*See* Bankr. Proc., Dock Nos. 5 & 11). Second, Debtor alleged that Golsorkhi did not

have the authority to sign the affidavit of confession – a claim again flatly contradicted by the plain terms of Debtor's own Articles of Incorporation (the "Articles"). (Ex. 3, First Department's October 23, 2018 decision in First Action (the "First Decision"), at 20). This false claim about Golsorkhi's authority is also inconsistent with the Resolution that the Debtor filed in this Bankruptcy Proceeding. (*See* Bankr. Proc., Dock No. 2, October 7, 2019 Resolution of Debtor)(Golsorkhi confirms that he "is authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, file and perform, in the name and on behalf of the [Debtor]"….). As such, Debtor and Golsorkhi's two arguments in the First Action were based on lies contradicted by their own documents.

18. On October 23, 2018, after one and a half years of litigation, the First Department unanimously held that the Judgment was valid, and dismissed the complaint under CPLR 3211(a)(1) and (7). (*See* Ex. 3, First Decision, at 19). Specifically, the First Department held that Golsorkhi had the authority under Debtor's Articles to execute the Judgment in Ms. Azari's favor. (*See id*. at 20-21). The First Department also found no "misconduct" by Ms. Azari. (*Id.* at 22)(holding that "[t]he misconduct alleged in the complaint is not the sort of misconduct that would warrant vacating the judgment (*See Giryluk,* 30 AD2d at 23 [a judgment by confession has "all of the qualities, incidents and attributes of a judgment on a verdict, including a presumption as to its validity."]). As such the Judgment is valid.

***The Second Action***

19. However, that did not stop one of the Foundation's beneficiaries, Kamran Abbas-Vahid, who was fully aware of the First Action, from filing a second action over the Judgment on October 1, 2019 – a week before a duly-noticed sheriff's sale of the Town House, Debtor's

sole asset (the "Sheriff's Sale"), and a full year after the First Decision.[3] He did so even though the Foundation had already represented his interests in the First Action by submitting an affidavit on behalf of the Foundation's beneficiaries.

20. In the Second Action, Abbas-Vahid again challenged the Judgment under CPLR 3218 and alleged "fraud and collusion" against Ms. Azari. (*See* Second Action, Dock No. 1, at ¶ 26). Abbas-Vahid also sought a temporary restraining order ("TRO") to enjoin the Sheriff's Sale. (*See id.* at Dock No. 6).

21. Not only did Judge Bannon deny the TRO and dismiss the entire action, but she admonished Abbas-Vahid's counsel for failing to disclose the controlling First Decision in his filings. (Ex. 4, Judge Bannon's October 4, 2019 Decision in the Second Action)("disposing" the action).[4]

22. Abbas-Vahid may have been a shill plaintiff for Debtor and the Foundation so that they could get a second bite at challenging the Azari Judgment. That is because the frivolous "fraud and collusion" theory that Abbas-Vahid concocted in the Second Action was the same theory that the Foundation had threatened to file against Ms. Azari a year earlier after Debtor lost the First Action. (Ex. 5, October 7, 2019 email from N. Mobargha to L.

---

[3] Ms. Azari waited **almost 9 months** to deliver an execution to the Sheriff to enforce her Judgment so that Debtor could have time to sell the Town House in an orderly manner, even though the Town House already had been on the market for four and one half years. However, as the events show, Debtor never had any intention of satisfying the Judgment. Rather, it was simply using every possible ploy to delay its enforcement – just as Debtor is doing again in this Bankruptcy Proceeding.

[4] In his October 8, 2019 Affidavit in this proceeding, Golsorkhi also intentionally fails to disclose that the First Department held that Ms. Azari did not engage in any "misconduct" in the execution of the affidavit of confession. (*See* Bankr. Proc, Dock No. 5, at ¶ 11). That is because he is attempting illegally to challenge the Judgment again in this Bankruptcy Proceeding.

Flick)(undersigned counsel confronts Blank Rome about the Foundation's past threat to file a second action against Ms. Azari for "collusion").

***The Bankruptcy Proceeding and The Threat To Litigate For Over Two More Years***

23. On October 8, 2019, four days after Judge Bannon dismissed the Second Action – and the night before the Sheriff's Sale – Debtor filed this Bankruptcy Proceeding.

24. Despite the First Department and Judge Bannon's decisions, in its filing, Debtor and Golsorkhi claim – remarkably – that both First Action and the Second Action are still "pending." (Bankr. Proc., Dock No. 13, pg. 18, Form 207, Part 3). Clearly in denial, they insist that they are still litigating with Ms. Azari.

25. This had been Debtor's plan all along. Four months earlier, on June 4, 2019, Debtor's counsel, Lawrence Flick of Blank Rome, had threatened Ms. Azari's counsel that, if she attempted to enforce her Judgment at any time, Debtor would file bankruptcy which would take "2 years" or "longer." (Ex. 6, June 4, 2019 email from L. Flick to M. Beys). The email confirms Debtor's plan to litigate the Judgment endlessly. There is no other reason why Debtor's simple sale of its single asset, the Town House should take over two years as Blank Rome claims.

26. However, Debtor admits that it "does [not] have any cash or cash equivalents" to keep litigating against Ms. Azari. (*See* Dock. No. 13, pg. 3, Form 206 A/B, Part 1).

***The Third Challenge To The Judgment***

27. Nevertheless, staying true to its threat, Debtor now attempts to challenge the Judgment – ***for a third time*** – again claiming that "Debtor believes that the Judgment is in far excess of the amount due Ms. Azari and entry of the judgment constitutes a fraudulent transfer" even though it was Debtor itself who admitted in the affidavit of confession that it owes this

9

precise amount to Ms. Azari, and did the transferring. (Bankr. Proc., Dock No. 5, at ¶ 14). Golsorkhi's complaint about the Judgment amount, which he awarded Ms. Azari for 49 years of service and the Princess' promises to her, is rich given that, when Golsorkhi served as a board member of the Foundation, he awarded himself $8 million. (*See* Ex. 7, By-Laws of the Foundation, Art. 2, No. 15)(Golsorkhi lists himself as an $8 million beneficiary).

***Debtor's False List Of Unsecured Creditors***

28. Another delay tactic of Debtor's was to falsely list the **Foundation's** obligations to pay its beneficiaries as **Debtor's** obligations so that it can complicate the bankruptcy and delay paying Ms. Azari's Judgment. For instance, it lists the following as unsecured claims against the estate: $150,000 claim by Ms. Azari; $20,000 by Danillo M. Rivera; $30,000 by Fatma Secilmis; $10,000 by Gerard Perdereau; $7,000,000 by Golsorkhi; and $20,000 by Stella Flores. (*See* Bankr. Proc., Dock No. 13, pgs. 11-13, Official Form 206 E/F). However, Article 2 of the Foundation's By-Laws confirm that these unsecured claims are in fact the Foundation's obligations. Specifically, the By-Laws state:

> The following individuals shall receive *from the Foundation*, at the time *when the Foundation* shall dispose of the necessary liquid assets to make payment thereof, the amount indicated in continuation of their names:

(*See* Ex. 7, Art. 2)(emphasis added). Then it lists the very same individuals and amounts above.

29. In fact, Ms. Azari is currently litigating her $150,000 bequest *against the Foundation and its board members* in an action in New York Supreme Court. (*See* Ex. 8, Amended Third-Party Complaint in Third-Party Action). Nowhere in her Third-Party Action did Ms. Azari name Debtor as a Third-Party Defendant or claim that Debtor owes her this $150,000 bequest. (*See id.*).

# ARGUMENT

**I- WITH THE AZARI LITIGATION OVER, HIRING BLANK ROME AS SPECIAL LITIGATION COUNSEL IS NOT IN THE BEST INTEREST OF DEBTOR AND WILL NOT LIKELY BENEFIT DEBTOR'S ESTATE UNDER SECTIONS 327(E) AND 330(A)(4)(A) OF THE BANKRUPTCY CODE**

30. The Court should deny the Blank Rome Application since there is no need for its "special litigation services" since the "Azari Litigation" has ended. Under section 327(e) of the Bankruptcy Code, Debtor, "with the court's approval, may employ, for a <u>specified special purpose</u>…an attorney that has represented Debtor, <u>if in the best interest of the estate</u>, and if such attorney does not represent or hold any interest adverse to Debtor or to the estate with respect to the matter on which such attorney is employed." 11 U.S.C. § 327(e). Similarly, under section 330(a)(4)(A), "the court shall not allow compensation for services that were not reasonably likely to benefit Debtor's estate."

31. <u>First</u>, the "specified special purpose" that Debtor has given for the retention of Blank Rome is its alleged "experience, knowledge, and familiarity with the Azari Litigation." (*See* Bankr. Proc., Dock No. 11, at ¶ 9; *see also* ¶¶ 10, 12)(invoking the "Azari Litigation" as an excuse to retain Blank Rome). However, the Azari litigation has ended – twice – in Ms. Azari's favor. The only Azari Litigation left is the Third Party Action against the Foundation, which the parties are litigating in New York Supreme Court. Debtor is not a party to that action. Consequently, it has no relevance to this Bankruptcy Proceeding.

32. Debtor, however, insists on challenging the Judgment for a third time simply because "Debtor believes that the Judgment is in far excess of the amount due Ms. Azari and entry of the judgment constitutes a fraudulent transfer." (Bankr. Proc., Dock No. 5, at ¶ 14). Debtor, however, can no longer question the validity of the Judgment or its the amount, and especially not on the basis of "fraud." Debtor already challenged the Judgment under CPLR

5015, which allows a court to vacate a judgment for "fraud, misconduct, or overreaching", and Vahid-Abbas, a beneficiary of the Foundation, also alleged "fraud and collusion" against Ms. Azari. Both the First Department and Judge Bannon rejected these meritless allegations. Consequently, Debtor now cannot assert a claim for fraud against Ms. Azari *for a third time*. *See e.g., Allen v. McCurry*, 449 U.S. 90, 94 (1980)("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). Should Debtor attempt to re-litigate this settled issue, Ms. Azari will seek sanctions against both Debtor and its counsel. *See* FRCP 11(b)(2)(Court may impose sanctions for a filing "presented for any improper purpose, such as to harass cause unnecessary delay, or needlessly increase the cost of litigation); 28 U.S.C. § 1927 ("An attorney…who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.").

33. Without any legal right to challenge the Judgment again, Debtor's retention of Blank Rome to uselessly litigate the validity of the Judgment a third time "is not in the best interests of Debtor" and is certainly not "reasonably likely to benefit Debtor's estate." 11 U.S.C. §§ 327(e) & 330(a)(4)(A). In its filing, Debtor fails to disclose any other "source of compensation" to fund its litigation campaign against Ms. Azari in this Bankruptcy Proceeding. Bankr. Rule 2016(a)(requiring such disclosure); *see also* 11 U.S.C. § 329(a)(similar requirement). Consequently, hiring Blank Rome would only deplete Debtor's assets further to the detriment of Debtor's unsecured creditors. Blank Rome already is Debtor's largest unsecured creditor with unpaid legal fees totaling almost $300,000, likely all concerning the

Debtor's litigation with Ms. Azari over the Judgment. (*See* Bank Proc., Dock. No. 4, 20 Largest Creditor List). This does not include what Debtor already has paid Blank Rome.

34. Debtor's retention of Rubin, LLC. as bankruptcy counsel, is enough for this simple bankruptcy proceeding. (*See* Dock No. 13, pg. 25, Disclosure of Compensation for Attorney)(If necessary, one of the services that Rubin, LLC provides is "representation of Debtor in adversary proceedings or other contested bankruptcy matters.").

## II- DEBTOR SHOULD NOT BE PERMITTED TO LIST THE OBLIGATIONS OF ITS SHAREHOLDER AS UNSECURED CLAIMS AGAINST IT

35. Debtor should not be permitted to list claims that are "unenforceable against Debtor" under Section 502 of the Bankruptcy Code as unsecured claims just to complicate this straightforward bankruptcy involving the sale of a single asset. 11 U.S.C. § 502(b)(1). Debtor unjustifiably listed the beneficiaries of its shareholder, a Lichtenstein Foundation, as its own. Without its shareholder's obligations, Debtor would be ***solvent.*** Indeed, once Debtor sells its Town House in a Section 363 sale under the Bankruptcy Code, it will be able to pay all secured and unsecured creditors.[5]

36. Ms. Azari has no issue with Debtor using the remaining proceeds from the sale of the Town House to pay the Foundation's beneficiaries – especially Mr. Rivera, Ms. Secilmis, and Ms. Flores. However, technically, they are not creditors of Debtor, and Golsorkhi should not use them as such to selfishly inject his own $7,000,000 claim into the Bankruptcy to justify Debtor's petition.

---

[5] With the Foundation's bequests to its beneficiaries properly removed as liabilities of Debtor, Debtor's total secured and unsecured claims total $10,279,287.28. Consequently, even if Debtor sells the Town House at the bargain basement price of $10,300,000 to its secured buyer, Debtor would be able to pay all of its debts.

13

# CONCLUSION

37. Ms. Azari respectfully requests that the Court deny Debtor's Application for an order authorizing the retention and employment of Blank Rome as special litigation counsel since (i) the Azari litigation has ended, and (ii) Debtor has no funds to pay for Blank Rome's services without impairing the other unsecured creditors; and requests the Court to order that Debtor's unsecured claims that are the obligations of its Foundation as "enforceable against Debtor" under section 502 of the Bankruptcy Code.

38. Ms. Azari also respectfully requests that the Court expedite any Chapter 11 or Chapter 7 Plan, if that is more appropriate, and any sale under section 363 of the Bankruptcy Code.

Dated: October 28, 2019
       New York, New York

**BEYS LISTON & MOBARGHA LLP**

By: _____/s/_____
     Nader Mobargha, Esq.

641 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (646) 755-3603
Facsimile: (646) 755-5229
Email: nmobargha@blmllp.com
*Attorneys for Secured Creditor*
*Azadeh Azari*