SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------- X

WANSDOWN PROPERTIES CORPORATION N.V.,

                            Plaintiff,

        -against-

AZADEH NASSER AZARI,

                            Defendant.

INDEX NO. 151406/17

**AMENDED THIRD-PARTY COMPLAINT WITH COUNTERCLAIMS**

----------------------------------------------------------------X

AZADEH NASSER AZARI,

                        Third-Party Plaintiff,

        -against-

PELMADULLA STIFTUNG, GUIDO MEIER, WERNER KEICHER, and ABDOLREZA ANSARI

                       Third-Party Defendants.

----------------------------------------------------------------X

      Defendant Azadeh Nasser Azari ("Ms. Azari"), by and through her undersigned attorney, for its Third-Party Complaint against Third-Party Defendants Pelmadulla Stiftung ("Pelmadulla"

or the "Foundation"), Guido Meier ("Meier"), Werner Keicher ("Keicher"), and Abdolreza Ansari ("Ansari") (collectively the "Board") allege as follows:

**NATURE OF ACTION**

1. Ms. Azari's counterclaims are straightforward. They concern the failure of Pelmadulla and its Board to pay a $150,000 bequest under the August 10, 2007 By-Laws of Pelmadulla (the "Trust"), which the Board executed for the benefit of the late Imperial Highness Princess Achraf Pahlavi (the "Princess"), the twin sister of the former Shah of Iran.

2. Under the Trust, the death of the Princess on January 6, 2016 triggered the obligation to pay Ms. Azari this bequest. This obligation is undisputed and uncontested by Pelmadulla and the Board. Indeed, Pelmadulla and the Board have admitted – in an affidavit and a memorandum *submitted to this Court* – that they owe Ms. Azari a $150,000 bequest under the Trust. Nevertheless, three and a half years have passed since the Princess' death, but Pelmadulla and its Board have failed to pay Ms. Azari this bequest – even *while paying other* beneficiaries of the Trust their bequests. As such, the Board selectively exercised its fiduciary duties by paying some of the beneficiaries, while denying others their rightful bequests.

3. When the Princess passed away, Pelmadulla had plenty of cash and assets to pay all of the beneficiaries their bequests, including Ms. Azari's $150,000. In fact, Pelmadulla's own financial statements and public records show that, in or around the time of the Princess' death, Pelmadulla had as much as $5.6 million in cash alone. In addition to cash, Pelmadulla had numerous assets and investments worth millions, if not tens of millions of dollars, including but not limited to, real estate in California, Colorado, France, New York, and St. Maarten, and jewelry belonging to the late Princess worth tens of millions of dollars.

4. Under the plain terms of the Trust, when the Princess died, Pelmadulla and the Board had an obligation to liquidate these assets and investments to pay the beneficiaries of the Trust.

5. To date, it is unclear what Pelmadulla and the Board have done with all of the Princess' cash, assets, and investments. Neither Pelmadulla nor the Board have provided Ms. Azari any update on the payment of Ms. Azari's bequest, any financial information concerning Pelmadulla, or any timeline for the payment of the bequest.

6. Instead, the Board continues to deplete the Princess' estate by paying itself and its counsel handsomely for "their services", while depriving other penniless beneficiaries of their rightful bequests. Worse yet, they continuously have lied to Ms. Azari by claiming that Pelmadulla "has no money."

7. This injustice has continued for over the past three and a half years after the Princess has passed away, and there is no end in sight.

8. As such, Ms. Azari seeks an order requiring Pelmadulla and the Board to pay her her rightful $150,000, with prejudgment interest beginning on January 6, 2016, and to provide an accounting to determine how Pelmadulla and the Board spent Princess Achraf's fortune after her death and an explanation as to why none of that money was used to pay Ms. Azari her bequest.

**PARTIES**

9. Counterclaim Plaintiff Ms. Azari is a beneficiary of the late Princess' Trust. She resides in New York County, New York.

10. Counterclaim and Third-Party Defendant Pelmadulla is a trust formed under the laws of the country of Lichtenstein and domiciled in Vaduz, Lichtenstein. Pelmadulla is the sole

owner of Wansdown Properties Corporation, N.V. ("Wansdown"), which has maintained its principal place of business at 29 Beekman Place, New York, New York 10022 since 1979.

11. Counterclaim and Third-Party Defendant Guido Meier is a current member of Pelmadulla's Board and was a member when the Board executed the Trust. Meier has an office at Pelmadulla Stiftung, ATU, Aeulestrasse 5, PO Box 83, 9490 Vaduz, Lichtenstein.

12. Counterclaim and Third-Party Defendant Werner Keicher is a current member of Pelmadulla's Board and was a member when the Board executed the Trust. Keicher has an office at Pelmadulla Stiftung, ATU, Aeulestrasse 5, PO Box 83, 9490 Vaduz, Lichtenstein.

13. Counterclaim and Third-Party Defendant Abdolreza Ansari is a member of Pelmadulla's Board and was a member when the Board executed the Trust. Ansari resides at 51 Bd. Beausejour, 75016 Paris. France, and has an office at Pelmadulla Stiftung, ATU, Aeulestrasse 5, PO Box 83, 9490 Vaduz, Lichtenstein.

**JURISDICTION AND VENUE**

14. The Court has personal jurisdiction over the Counterclaim and Third-Party Defendants because Pelmadulla wholly owns Wansdown, which has had its principal place of business at 29 Beekman Place, New York, New York 10022 for the past 40 years, since 1979. Furthermore, the remaining Pelmadulla Board Members filed documents with this Court, including an affidavit and a memorandum of law, concerning the subject matter of the Counterclaim. In their filings, the Board admitted that they owed Ms. Azari, the Third-Party Counterclaim Plaintiff, the $150,000 that is the subject of the counterclaim.

15. Finally, Ms. Azari is a resident of New York, as are many of the beneficiaries of the Trust, and has suffered financial injury in New York as a result of the actions of Pelmadulla and the Board.

4

16. Venue is proper because (i) Pelmadulla is the alleged sole shareholder of Wansdown, whose principal place of business is in New York County; (ii) the venue for this action is already in New York County; (iii) Pelmadulla and its Board have already submitted filings in this action concerning the Counterclaim; and (iv) Ms. Azari is a resident of New York County, as are other beneficiaries of Pelmadulla.

## STATEMENT OF FACTS

*While The Princess Was Alive And Of Sound Mind, Pelmadulla And Its Board Executed The Trust On Her Behalf*

17. On August 10, 2007, while the Princess was alive and of sound mind, the Pelmadulla Board executed the Trust on her behalf, which listed the beneficiaries to the Princess' fortune. Upon information and belief, after the 1979 Iranian revolution, the Princess fled Iran with a fortune of $700 million, which in today's terms would have been billions of dollars. While that was 28 years prior to the Trust's execution, the Princess' estate had plenty of cash and assets that were to be distributed to various beneficiaries upon her death.

18. Article 1 of the Trust indicates that the "first beneficiary…is [the] Princess."

19. Article 2 of the Trust provides as follows:

At the time of the death of the first beneficiary, these By-Laws shall become unchangeable and the members of the Board of [Pelmadulla] shall act in conformity therewith.

Any and all outstanding liabilities and debts of the first beneficiary at the time of her death shall be paid by [Pelmadulla] as the first priority. [Pelmadulla] shall use to that effect its available assets.

The following individuals shall receive from [Pelmadulla], at the time when [Pelmadulla] shall dispose of the necessary liquid assets to make payment thereof, the amount indicated in continuation of their names.

20. Article 2 of the Trust then lists 15 individuals who are to receive bequests.

21. The majority of these beneficiaries reside in the United States, and particularly, in New York.

22. Counterclaim Plaintiff Ms. Azari was one of these individuals. Under the Trust, she was entitled to a $150,000 bequest.

23. After listing the 15 individuals, the Trust also indicates that $3,000,000 is owed to another beneficiary.

24. Article 3 then lists another set of individuals to receive distributions once Pelmadulla has paid the beneficiaries in Article 2 and its own liquidation expenses. Specifically, Article 3 provides that "[t]he whole of the assets remaining to [Pelmadulla] after payments to the amounts mentioned under Article 2 hereabove and subject to the amount necessary to cover the expenses for the liquidation of the Foundation including the remuneration of its curator and the members of its Board of Directors shall be divided as follows among the beneficiaries hereunder indicated." Article 3 then lists individuals who are to divide the remaining assets of the Princess.

25. Article 4 provides that the Trust should use **all** assets and cash to pay the beneficiaries of the Trust. It states that "[a]t the time of the death of the first beneficiary, the members of the Board of [Pelmadulla] shall sell the company WANSDOWN Ltd. or the building which belongs to the said company located at Beekman Place, New York, USA. They ***shall also undertake the sale of any other assets which, at that time, belong to the Foundation in order to provide the liquid assets necessary to the implementation of the present By-Laws***." (emphasis added).

26. A little over a year later, in September 2008, the Princess lost her mind and became incapacitated. Anthony D. Kerman, a former member of the Board, admitted this in writing.

***Pelmadulla Does Not Dispute That It Owes Ms. Azari $150,000 Under The Trust***

27. Pelmadulla and the Board have never disputed that they owe Ms. Azari the $150,000 under the Trust. In fact, Pelmadulla and the Board confirmed this debt in both an affidavit and memorandum of law filed in this action. (*See* This Action, Dock No. 16, at 9-10 & No. 18, at ¶ 36).

28. Under the Trust, Pelmadulla only has to pay the "outstanding liabilities and debts of [Princess Achraf[ *at the time of her death*" before it has to pay the beneficiaries listed in the Trust, including Ms. Azari. (emphasis added). The "remuneration" of the Board and the payment of "the expenses for the liquidation of [Pelmadulla]" ***must follow*** the payment of the beneficiaries, including Ms. Azari, in Article 2.

29. Bunyamin Taskapan, counsel for Pelmadulla, admitted in writing that the Princess' death on January 6, 2016 "triggered" Pelmadulla's obligation to pay the beneficiaries listed in Article 2.

30. And, in fact, as it was obligated to do, Pelmadulla has paid numerous beneficiaries listed in Article 2 of the Trust.

31. However, Pelmadulla has failed to exercise its fiduciary duty – even after the passage of over three and a half years since the Princess' death – to Ms. Azari by withholding her $150,000 bequest.

***Upon the Princess' Death, Pelmadulla Had Sufficient Cash To Pay The Beneficiaries Of The Trust***

32. Cash was not an issue for Pelmadulla and the Board. As of December 31, 2015, one week before the Princess' death, Pelmadulla had enough money to pay both the remaining expenses of the Princess at the time of her death and Ms. Azari's $150,000 bequest.

33. Pelmadulla had over $1,518,374.72 of loans that were due to it. Upon information and belief, the debtors repaid these loans during the next three and one half years. Pelmadulla had another $2,250, 237.36 in cash in an account entitled "Current Account CP." Finally, it had another $79,000 in a "Transit Account." All of these items were listed under "Accounts Receivables" in the financial statements they provided.

34. The total cash as of December 31, 2015 – one week before the Princess' death – was **$3,847,752.08**. This is just the cash that Pelmadulla itself has admitted it had. There may be additional accounts that Pelmadulla and the Board have still not disclosed, especially ones that they hold in Vaduz, Lichtenstein.

35. Less than two months later, on February 11, 2016, Gholam Reza Golsorkhi, the President and Managing Director of Wansdown and a former Pelmadulla Board member, took out a $2,000,000 mortgage on Wansdown's townhouse at 29 Beekman Place and, upon information and belief, sent the funds back to Pelmadulla.

36. Consequently, shortly after the Princess' death, Pelmadulla had ***at least*** **$5,847,752.08** cash on hand. None of those funds were used to pay Ms. Azari's $150,000 bequest.

37. Instead, for the past three and one half years, Pelmadulla and the Board have used these funds to pay themselves handsome salaries and their counsel legal fees. With the Princess long passed away, it is unclear what services they are performing as trustees and why they

continue to pay themselves instead of the beneficiaries as they are obligated to do under the Trust.

***Pelmadulla Has Had Over Three And A Half Years To Liquidate The Assets And Investments Of The Princess To Pay All The Beneficiaries Of The Trust***

38. Under the Trust, Pelmadulla also had an obligation to liquidate the Princess' assets and investments after her death so that it could pay the beneficiaries.

39. According to Pelmadulla's own financial statements, Pelmadulla's total tangible assets as of December 31, 2015 were $2,975,794.30. Part of these tangible assets was the Princess' jewelry that Pelmadulla admits was worth $1,841,000, though the value is much, much higher. Upon information and belief, there are plenty of additional tangible assets, including but not limited to, valuable paintings that the Princess owned, none of which Pelmadulla listed on its financial statements. It is unclear what happened to these valuable assets.

40. In addition, Pelmadulla's investments also include real properties in St. Maarten, Colorado, France, New York, and California, and numerous others that Pelmadulla listed in its financial statements.

41. Pelmadulla set up numerous entities to make these real estate investments throughout the past thirty or forty years.

42. These entities were Dutch Parent N.V., Waverton, Holsand Investments N.V, and Wansdown, just to name a few. It is unclear what happened to the proceeds from these investments.

43. Furthermore, SCI Galice was a special purpose vehicle that held real property in France, specifically, upon information and belief, real property located in Juan-les-Pins, France valued at over $17,000,000.

44. Finally, Safe Haven Commercial BVI held additional Pelmadulla investments. Pelmadulla may have liquidated these investments, but it has provided no transparency on how it spent those funds.

45. Pelmadulla highly undervalued many of these investments, claiming in many cases that they were "worthless."

46. This is likely just the tip of the iceberg. That is because Pelmadulla and the Board, despite still owing some of the beneficiaries their money under the Trust, have not provided any transparency to Ms. Azari about its actions.

47. Indeed, not once in the past three and a half years has Pelmadulla or its counsel provided any update on the payment of Ms. Azari's bequest, provided any financial information concerning the Pelmadulla, or given any timeline for the payment of the bequest. They continue to operate in a black box, while depleting the assets of the Princess for their own benefit.

48. And while they deplete the Princess' assets for their own personal gain, the Board members, for the past three and a half years, have continuously lied to Ms. Azari, and upon information and belief, to other unpaid beneficiaries that "there is no money."

**FIRST COUNTERCLAIM**
**(Conversion)**

49. Ms. Azari repeats and realleges all of the allegations in paragraphs 1 through 48 of the Counterclaim pleading as though fully set forth therein.

50. Defendants have intentionally and without authority assumed and exercised control and dominion over the Princess' assets long after her death and long after paying the expenses of the Princess which existed at the time of her death.

51. Ms. Azari has a possessory right in a $150,000 bequest from the Princess' estate, as the Trust explicitly states.

52. Defendants have exercised control and dominion, and interfered with, Ms. Azari's possessory interest in a $150,000 bequest for the past three and a half years by failing to pay her out of the cash, investments, and assets of the Princess.

53. As a result, Ms. Azari has suffered damages in the amount of $150,000, plus interest.

**SECOND COUNTERCLAIM**
**(Breach of Fiduciary Duty)**

54. Ms. Azari repeats and realleges all of its allegations in paragraphs 1 through 53 of its Counterclaim pleading as though fully set forth therein.

55. A fiduciary duty relationship exists between Pelmadulla and the Board, who executed the Trust on the Princess' behalf, and Ms. Azari, who is a beneficiary under the Trust.

56. Defendants have engaged in misconduct by intentionally failing to pay Ms. Azari her $150,000 bequest despite three and a half years passing since the Princess' death and despite having plenty of cash on hand when the Princess' died.

57. Defendants have also engaged in misconduct by intentionally delaying the liquidation of the Princess' assets and investments long after the Princess' death, but still paying themselves and their counsel.

58. Defendants have further made materially false misrepresentations to Ms. Azari by claiming that Pelmadulla "has no money" when, in fact, Pelmadulla's admissions in their own financial statements, which they created, and their own expenditures during the last three and a half years show that they had plenty of cash.

59. Ms. Azari has been damaged by the defendants' conduct since she has still not received her $150,000 bequest under the Trust a full three and a half years after the Princess died.

11

## THIRD COUNTERCLAIM
### (Constructive Trust)

60. Ms. Azari repeats and realleges all of its allegations in paragraphs 1 to 59 of its Counterclaim pleadings as though fully set forth therein.

61. A constructive trust is a necessary equitable remedy here to prevent Pelmadulla and the Board from unjustly enriching themselves.

62. A confidential and fiduciary relationship exists between Ms. Azari and defendants since she is a beneficiary of the Trust and the Trust was executed on behalf of the Princess.

63. Under the Trust, Defendants promised to transfer a $150,000 bequest to Ms. Azari upon the Princess' death and after paying all the Princess' expenses that existed at the time of her death.

64. Defendants have intentionally failed to fulfill this promise.

65. Instead, defendants have transferred cash and assets that should have been used to pay Ms. Azari to other entities or individuals, including themselves and their counsel.

66. As a result of defendants' actions, they have unjustly enriched themselves at Ms. Azari's expense.

67. A constructive trust in Ms. Azari's favor should be imposed to satisfy the demands of equity and good conscience.

## FOURTH COUNTERCLAIM
### (Accounting)

68. Ms. Azari repeats and realleges all of its allegations in paragraphs 1 to 67 of its Counterclaim pleadings as though fully set forth therein.

69. Because Ms. Azari is a beneficiary under the Trust, Pelmadulla and the Board owe her a fiduciary duty.

70. Ms. Azari and the Board have a special confidential relationship in which Ms. Azari entrusted defendants to act in her best interests by properly using the Princess' cash, assets, and investments to pay her $150,000 bequest.

71. As such, she has a right to an accounting to determine why Pelmadulla and the Board have not paid her $150,000 bequest for the past three and a half years.

72. Throughout the last three and a half years, Pelmadulla also has claimed that they have no money to pay the beneficiaries, including Ms. Azari – in the face of their own financial statements, which show they had plenty of cash to pay Ms. Azari's $150,000 bequest.

73. Without an accounting, Ms. Azari has no way of knowing how Pelmadulla and the Board have disposed of the Princess' cash, assets, and investments for the past three and a half years.

74. No other legal remedy is adequate.

### FIFTH COUNTERCLAIM
### (Breach of Contract)

75. Ms. Azari repeats and realleges all of its allegations in paragraphs 1 to 74 of the Counterclaim pleadings as if fully set forth herein.

76. Ms. Azari is a contractual beneficiary of the Trust, executed by all the members of the Board.

77. As signatories to the Trust, Defendants had a duty to follow the plain terms of the Trust, but have intentionally failed to do so and breached the Trust agreement.

78. Pelmadulla Board members who became members after the execution of the Trust also were bound to follow its plain terms.

79. Defendants have intentionally failed to perform their contractual duties under the Trust by failing to pay Ms. Azari her rightful bequest.

80. As a result of the breach, Ms. Azari has suffered damages in the amount of $150,000, the amount to which she was entitled under the Trust, plus interest.

**WHEREFORE**, Counterclaimant Azadeh Nasser Azari hereby demands judgment and orders as follows against Counterclaim and Third-Party Defendants:

1. An award of $150,0000 in monetary damages, plus pre-judgment interest accruing at a rate to be determined by the Court;

2. An award of costs, disbursements, and reasonable counsel fees associated with this action; and

3. Any other relief the Court deems just and proper.

Dated: New York, New York
       September 27, 2019

                              **BEYS LISTON & MOBARGHA LLP**

               By:            */s/*
                     Nader Mobargha, Esq.

                     825 Third Avenue, 2nd Floor
                     New York, New York 10022
                     Telephone: (646) 755-3603
                     nmobargha@blmbllp.com
                     *Attorneys for Defendant and Counterclaim*
                     *Plaintiff Azadeh Nasser Azari*