# RUBIN LLC
*Attorneys at Law*

345 Seventh Avenue, 21st Floor
New York, New York 10001
www.rubinlawllc.com

PAUL A. RUBIN                                                                                                                      Telephone: 212.390.8054
prubin@rubinlawllc.com                                                                                                    Facsimile:  212.390.8064

January 15, 2020

Via ECF
Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Re:    In re Wansdown Properties Corporation N.V.; Case No. 19-13223 (SMB)

Dear Judge Bernstein:

This firm is counsel to the debtor in the above-reference chapter 11 case (the "Debtor").  As the Court is aware, an adjourned hearing is scheduled for tomorrow January 16, 2020 at 10:00 a.m. (the "Sale Hearing") on the Debtor's motion to sell its real property located at 29 Beekman Place, New York, NY (the "Property") to 29 Beekman Corp. (the "Purchaser") under that certain *Residential Contract of Sale* dated September 25, 2020 (together with exhibits and riders thereto, the "Purchase Agreement").

We write to promptly advise the Court in advance of the Sale Hearing that we have just received this afternoon the annexed letter from Seth Akabas, counsel for the Purchaser, that gives notice of the Purchaser's refusal to grant an extension of time to close past January 31, 2020.  At the same time, Mr. Akabas expresses the Purchaser's position that it is not required by the Purchase Agreement to purchase the Property through a section 363 sale because a chapter 11 plan remains possible.  Mr. Akabas then states the Purchaser's intent "***to terminate the contract of sale if a bankruptcy plan is not final and non-appealable in time for a closing to occur by the current deadline, January 31, 2020.***"  *See* Letter from Mr. Akabas pg. 2 (emphasis added).  Mr. Akabas was present in Your Honor's courtroom on January 14, 2020, when Your Honor stated that the earliest a confirmation hearing on a chapter 11 plan could occur would be the end of February.  Mr. Akabas sent the attached letter despite his knowledge that confirmation of a plan by January 31, 2020 would not be possible.

Notwithstanding Mr. Akabas's statements to the contrary, the Purchase Agreement permits the Debtor to sell the Property to the Purchaser via a section 363 sale because confirmation of a chapter 11 plan in this case before the January 31, 2020 closing deadline (a deadline that the Purchaser has refused to extend) is not possible.  *See* Purchase Agreement, Second Rider ¶ 51(a).

Mr. Akabas further states in his letter that the Purchaser's refusal to proceed with a section 363 sale of the Property is also a result of the Debtor's unwillingness to honor its purported "acceptance" of a material modification to the Purchaser Agreement with respect to payment of the mansion tax, which is an obligation of the Purchaser. *See* Purchase Agreement, First Rider ¶ 40. As Mr. Akabas himself admits, the Purchaser attempted to shift the obligation to pay the mansion tax on to the Debtor by inserting language into the draft sale order that Mr. Akabas insists we "accepted."[1] In fact, when we noticed the modification to the mansion tax obligation that we had originally overlooked, we promptly brought it to Mr. Akabas's attention within hours and informed him of our oversight. The mansion tax on this transaction would be $334,750, which is a substantial obligation.

We thought it important to bring this new development to the Court's attention in advance of the hearing.

        Respectfully submitted,

        RUBIN LLC

        By:   */s/ Paul A. Rubin*
                Paul A. Rubin

cc:    (all via email)
       Seth A. Akabas, Esq.
       Ira Herman, Esq.
       Nader Mobargha, Esq.
       Sanford Rosen, Esq.
       Paul Schwartzberg, Esq.
       Erica Aisner, Esq.

---

[1] Mr. Akabas proposed the following insertion into the draft sale order: "The Purchaser is hereby authorized at Closing, without further order of this Court, and directed to pay, out of the purchase price for the Property, any real estate taxes owed by or allocated to the Debtor in respect of any period and/or periods prior to Closing, the payoff amount owed to the Mortgage Lender, the "mansion tax" imposed on the Purchaser in connection with the Purchaser's purchase of the Property, and any other expenses directed by the Debtor."

**RUBIN LLC**

# EXHIBIT

## AKABAS & SPROULE
ATTORNEYS AT LAW
488 MADISON AVENUE
11TH FLOOR
NEW YORK, NY 10022
(212) 308-8505
FACSIMILE (212) 308-8582
WWW.AKABAS-SPROULE.COM

SETH A. AKABAS
MICHAEL H. SPROULE†
DAVID E. BAMBERGER

SENIOR COUNSEL
THOMAS A. CANOVA
MARTIN TODTMAN

JESSE E. GREENE

†ADMITTED NY & MA

COUNSEL
RUTH J. WITZTUM
HENRY RAKOWSKI
RICHARD A. MEDINA**
MARTIN L. LERNER***

LOUIS J. LAMATINA**
5105 FARVIEW AVENUE
PARAMUS, NJ 07652
(201) 291-1122

**ADMITTED NY & NJ
***ADMITTED NY & CA

January 15, 2020

By Email
Paul A. Rubin, Esq.
prubin@rubinlawllc.com
Rubin LLC
21st Floor
345 Seventh Avenue
New York, NY 10001

    Re:    Residential Contract of Sale dated September 25, 2019 between Wansdown
              Properties Corporation N.V. and 29 Beekman Corp.

Dear Paul:

        As you know, our firm, Akabas & Sproule, represents 29 Beekman Corp.

        We have received an answer and direction from our client with regard to the request for a 45-day extension of the January 31, 2020 deadline in the subject contract. The buyer has become very uneasy with the twists and turns in this case, including the objections, the new claims that were not disclosed to the buyer as part of the negotiations, the changes in terms, and, in particular, the assertions that the buyer may have colluded in some way with the seller.

        As we have noted, the buyer wanted to close this deal on a fast track last fall outside of any bankruptcy, but conceded to the seller's strong insistence on the bankruptcy process and the promise that a bankruptcy plan would be done and would save the buyer several hundred thousand dollars of mansion tax to compensate buyer for its heavy costs of waiting. The buyer agreed to such plan, despite the inconvenience and cost of buyer's being held in limbo, incurring extra fees and leaving millions of dollars in funds un-investable, but only subject to definitive terms that buyer demanded – the deal had to be pursuant to a plan that would save the mansion tax, and, separately, closing could not go beyond January 31, 2020, without the Buyer's separate consent. Seller then requested that the contract also cover a "363" sale, and Buyer was reluctant, but conceded, but only in the very narrow circumstance that a plan was "not possible."

        Buyer understands that the new claims and objections may not have been anticipated when the contract of sale was signed, but these claims and objections were not related in any way to buyer, and

they have not made a bankruptcy plan "not possible," rather they have made it not convenient or not desirable for seller. Seller has conceded that a plan is still possible through its express request for a 45-day extension of the January 31, 2020 deadline in order to refile and have adopted a bankruptcy plan. Buyer never previously disavowed its intention to purchaser under such a plan. Such a plan, however, would require noting that buyer could opt out if not satisfied with the plan or the confirmation order, and the proposed sale would likely have to have a fallback, such as an auction sale, so we understand that proceeding with such a plan would be undesirable, but certainly far from "not possible." Therefore, the buyer is not in a position in which it must now accept a pre-plan "363" sale because a plan remains possible.

We, nonetheless, did try to accommodate the seller's request to switch tracks to a 363 sale on a voluntary basis, and we worked with you to achieve that end. One of several conditions for buyer's acquiescence on a voluntary basis to a 363 sale was that it not suffer to have to pay the mansion tax. This point was included in our first round of comments on the draft sale order last week, and was marked in color-coded changes with all other proposed revisions. This change was "accepted" along with other changes in terms of the sale, by way of a new draft sale order circulated by seller this week (which included seller changes <u>to the very phrase switching responsibility</u> for the mansion tax), apparently in recognition of the contract status as outlined above, but now seller has repudiated the "acceptance" of just that one "accepted" condition, i.e., the mansion tax assumption.

As noted above, this back and forth is part of what has become very troubling to the buyer. The buyer stands by its obligations under the contract of sale if a plan is confirmed by a confirmation order reasonably acceptable to buyer that is final and non-appealable in time for a closing by the current deadline, January 31, 2020. If not, then buyer's position under the contract of sale would remain as a contract party with an option to buy the property under a plan or a 363 sale in buyer's sole discretion. That position would be exactly what buyer expressly negotiated to get in this scenario of unforeseen setbacks. Buyer, however, does not want to exert that right because its exertion would further complicate the bankruptcy and might well result in no benefit to buyer and significant impediments to seller. Also, buyer has directed its preference that I not testify about the facts of the negotiation, mainly because I was not part of the negotiation of the critical $10,300,000 purchase price.

So, although the buyer is not willing to extend the January 31, 2020 deadline, the buyer will elect to terminate the contract of sale if a bankruptcy plan is not final and non-appealable in time for a closing to occur by the current deadline, January 31, 2020. Buyer will await that outcome, but is withdrawing from any further voluntary participation in a pre-plan 363 sale.

   This letter shall not be, or be deemed to be, a waiver of any right or remedy of our client, whether at law or equity, each of which is hereby specifically reserved.

Very truly yours,

Seth A. Akabas

cc: 29 Beekman Corp.
  Lawrence Flick II, Esq.
  Ira Herman, Esq.
  Hanh Huynh, Esq.
  Nader Mobargha, Esq. (NMobargha@blmllp.com)
  Sanford Rosen, Esq. (SRosen@rosenpc.com)