# RUBIN LLC
*Attorneys at Law*

345 Seventh Avenue, 21st Floor
New York, New York 10001
www.rubinlawllc.com

PAUL A. RUBIN                                                                                              Telephone: 212.390.8054
prubin@rubinlawllc.com                                                                          Facsimile:  212.390.8064

February 11, 2020

<u>Via ECF and email</u>
Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

      Re:    <u>*In re Wansdown Properties Corporation N.V.*</u>; <u>Case No. 19-13223 (SMB)</u>

Dear Judge Bernstein:

This firm is counsel to the above-referenced debtor (the "<u>Debtor</u>").  The Debtor is the seller under the *Residential Contract of Sale* dated September 25, 2019 (the "<u>Purchase Agreement</u>") with 29 Beekman Corp. (the "<u>Purchaser</u>") for the sale of the Debtor's real property located at 29 Beekman Place, New York, NY (the "<u>Property</u>").  On January 16, 2020, the Court entered an order (the "<u>Sale Order</u>") [ECF No. 55] authorizing the Debtor to assume the Purchase Agreement and approving the sale of the Property to the Purchaser.  For the reasons explained below, we submit this letter to request a status conference with the Court this Thursday February 13, 2020 at 10:00 a.m., at which status conference we believe counsel for the Purchaser should also be present.  There is already a hearing scheduled in this case for that date and time to consider the Debtor's motion to extend exclusivity.

As the Court may recall, on the eve of the adjourned hearing on the Debtor's sale motion, in response to the Debtor's request that the Purchaser extend the closing deadline, Mr. Akabas, counsel for the Purchaser, wrote us notifying that, the Purchaser "is not willing to extend the January 31, 2020 deadline, [and] ***the buyer will elect to terminate the contract of sale if a bankruptcy plan is not final and non-appealable in time for a closing to occur by the current deadline, January 31, 2020***."  *See* January 15, 2020 letter from Mr. Akabas (emphasis added), a copy of which is attached as <u>Exhibit A</u>.  Following the sale hearing, the Court entered the Sale Order.  During a January 17, 2020 telephonic conference call with the Court, the Purchaser requested certain changes to the Sale Order.  The Court stated to Mr. Akabas that the Debtor would have to be "foolish" to agree to the entry of a revised sale order without a corresponding extension of the January 31st deadline.  By letter to the Court dated January 22, 2020, Mr. Akabas notified the Court that the Purchaser, once again, declined to extend the deadline past January 31, 2020.  A copy of Mr. Akabas's January 22nd letter is attached as <u>Exhibit B</u>.

Based on the Purchaser's unequivocal refusal to grant an extension of the closing deadline, the Debtor sent notice of the scheduled closing for January 31, 2020.  The Debtor's real estate counsel then prepared for a January 31st closing.  But rather than proceeding to close, Mr. Akabas sent an email on January 29, 2020 notifying the Debtor of the Purchaser's exercise of its right under Section 52(d) of the Purchase Agreement to extend the "Final Date" of the closing to February 10, 2020.  A copy of Mr.

Akabas's January 29th email is attached as <u>Exhibit C</u>. Section 52(d) of the Purchase Agreement permits the Purchaser to extend the January 31, 2020 "Final Date" up to 30 days after entry of the Sale Order (or February 15, 2020), so long as an extension request is made prior to the lapse of then effective Final Date.[1] After receiving the Purchaser's notice of extension of the Final Date, counsel for the Debtor accommodated the Purchaser's extension and scheduled a February 10, 2020 closing. Once again, the Debtor's real estate counsel prepared for a closing with the Purchaser.

On February 10th, however, Mr. Akabas sent an email notifying the Debtor of the Purchaser's exercise of its purported right under Section 52(d) of the Purchase Agreement to further extend the Final Date to May 10, 2020.[2] A copy of Mr. Akabas's February 10th email is attached as <u>Exhibit D</u>. As explained above, by operation of Section 52(d) of the Purchase Agreement, the Purchaser has no right to extend the Final Date past February 15, 2020. Accordingly, Mr. Akaba's notice to extend the Final Date to May 10, 2020 has no effect. The only effective Final Date is February 10, 2020, and the Purchaser's failure to close by February 10, 2020 is a material default under the Purchase Agreement. Moreover, as the Court acknowledged at the sale hearing on January 16, 2020, the substantial carrying costs, taxes, and other expenses accruing on the Property renders the Debtor's situation a "melting ice cube," and any delay in a sale of the Property is highly prejudicial to the Debtor. Default interest on the senior mortgage debt alone accrues at approximately $50,000 per month. Given the Purchaser's past conduct, lack of cooperation, and bad faith dealings, the Debtor cannot take the risk that a closing with the Purchaser might never occur, and the Debtor certainly cannot agree to delay the closing until May 10, 2020.

In light of these recent developments regarding the Purchaser's failure to close in accordance with the Sale Order and the Purchase Agreement, we believe it important to hold a status conference on February 13, 2020 (at which time the Debtor will already be appearing before the Court on its exclusivity motion), because the Debtor needs to know, once and for all, whether the Purchaser will close on or before February 15, 2020. The Debtor respectfully requests that the Court direct the Purchaser's appearance, through counsel, at the status conference.

We are grateful for the Court's time and consideration of this request.

        Respectfully submitted,

        RUBIN LLC

        By:    <u>/s/ Paul A. Rubin</u>
                Paul A. Rubin

---

[1] Section 52(d) of the Purchase Agreement provides as follows:

> The Closing shall occur within forty-five (45) days after the entry of the Confirmation Order but no later than January 31, 2020 (such January 31, 2020 date, as extended hereunder, the "Final Date"); provided, however, that Purchaser may extend such Final Date, on one or more occasions, until the earlier of 30 days after the entry of the Confirmation Order or January 31, 2021 by notice to Seller prior to the passing of the then effective Final Date.

The term "Confirmation Order," as defined in the Purchase Agreement, includes an order approving a sale under section 363 of the Bankruptcy Code. *See* Purchase Agreement § 51(a). Because the Sale Order was entered on January 16, 2020, the Purchaser may not extend the Final Date beyond February 15, 2020 (the date that is 30 days after entry of the Sale Order).

[2] Mr. Akabas's initial email on February 10th noticed an extension to March 10, 2020, but Mr. Akabas sent a second email on February 10th explaining that the March 10th date was a typographical error and that the Purchaser had intended to extend the Final Date to May 10, 2020.

**RUBIN LLC**

# EXHIBIT A

19-13223-smb Doc 54 Filed 01/15/20 Entered 01/15/20 16:36:36 Main Document Pg 4 of 18

# AKABAS & SPROULE
ATTORNEYS AT LAW
488 MADISON AVENUE
11TH FLOOR
NEW YORK, NY 10022
(212) 308-8505
FACSIMILE (212) 308-8582
WWW.AKABAS-SPROULE.COM

SETH A. AKABAS
MICHAEL H. SPROULE†
DAVID E. BAMBERGER

SENIOR COUNSEL
THOMAS A. CANOVA
MARTIN TODTMAN

JESSE E. GREENE

†ADMITTED NY & MA

COUNSEL
RUTH J. WITZTUM
HENRY RAKOWSKI
RICHARD A. MEDINA**
MARTIN L. LERNER***

LOUIS J. LAMATINA**
5105 FARVIEW AVENUE
PARAMUS, NJ 07652
(201) 291-1122

**ADMITTED NY & NJ
***ADMITTED NY & CA

January 15, 2020

By Email
Paul A. Rubin, Esq.
prubin@rubinlawllc.com
Rubin LLC
21st Floor
345 Seventh Avenue
New York, NY 10001

Re: Residential Contract of Sale dated September 25, 2019 between Wansdown
Properties Corporation N.V. and 29 Beekman Corp.

Dear Paul:

As you know, our firm, Akabas & Sproule, represents 29 Beekman Corp.

We have received an answer and direction from our client with regard to the request for a 45-day extension of the January 31, 2020 deadline in the subject contract. The buyer has become very uneasy with the twists and turns in this case, including the objections, the new claims that were not disclosed to the buyer as part of the negotiations, the changes in terms, and, in particular, the assertions that the buyer may have colluded in some way with the seller.

As we have noted, the buyer wanted to close this deal on a fast track last fall outside of any bankruptcy, but conceded to the seller's strong insistence on the bankruptcy process and the promise that a bankruptcy plan would be done and would save the buyer several hundred thousand dollars of mansion tax to compensate buyer for its heavy costs of waiting. The buyer agreed to such plan, despite the inconvenience and cost of buyer's being held in limbo, incurring extra fees and leaving millions of dollars in funds un-investable, but only subject to definitive terms that buyer demanded – the deal had to be pursuant to a plan that would save the mansion tax, and, separately, closing could not go beyond January 31, 2020, without the Buyer's separate consent. Seller then requested that the contract also cover a "363" sale, and Buyer was reluctant, but conceded, but only in the very narrow circumstance that a plan was "not possible."

Buyer understands that the new claims and objections may not have been anticipated when the contract of sale was signed, but these claims and objections were not related in any way to buyer, and

AKABAS & SPROULE
ATTORNEYS AT LAW

January 15, 2020
Paul A. Rubin, Esq.
Page two of three

they have not made a bankruptcy plan "not possible," rather they have made it not convenient or not desirable for seller. Seller has conceded that a plan is still possible through its express request for a 45-day extension of the January 31, 2020 deadline in order to refile and have adopted a bankruptcy plan. Buyer never previously disavowed its intention to purchaser under such a plan. Such a plan, however, would require noting that buyer could opt out if not satisfied with the plan or the confirmation order, and the proposed sale would likely have to have a fallback, such as an auction sale, so we understand that proceeding with such a plan would be undesirable, but certainly far from "not possible." Therefore, the buyer is not in a position in which it must now accept a pre-plan "363" sale because a plan remains possible.

We, nonetheless, did try to accommodate the seller's request to switch tracks to a 363 sale on a voluntary basis, and we worked with you to achieve that end. One of several conditions for buyer's acquiescence on a voluntary basis to a 363 sale was that it not suffer to have to pay the mansion tax. This point was included in our first round of comments on the draft sale order last week, and was marked in color-coded changes with all other proposed revisions. This change was "accepted" along with other changes in terms of the sale, by way of a new draft sale order circulated by seller this week (which included seller changes <u>to the very phrase switching responsibility</u> for the mansion tax), apparently in recognition of the contract status as outlined above, but now seller has repudiated the "acceptance" of just that one "accepted" condition, i.e., the mansion tax assumption.

As noted above, this back and forth is part of what has become very troubling to the buyer. The buyer stands by its obligations under the contract of sale if a plan is confirmed by a confirmation order reasonably acceptable to buyer that is final and non-appealable in time for a closing by the current deadline, January 31, 2020. If not, then buyer's position under the contract of sale would remain as a contract party with an option to buy the property under a plan or a 363 sale in buyer's sole discretion. That position would be exactly what buyer expressly negotiated to get in this scenario of unforeseen setbacks. Buyer, however, does not want to exert that right because its exertion would further complicate the bankruptcy and might well result in no benefit to buyer and significant impediments to seller. Also, buyer has directed its preference that I not testify about the facts of the negotiation, mainly because I was not part of the negotiation of the critical $10,300,000 purchase price.

So, although the buyer is not willing to extend the January 31, 2020 deadline, the buyer will elect to terminate the contract of sale if a bankruptcy plan is not final and non-appealable in time for a closing to occur by the current deadline, January 31, 2020. Buyer will await that outcome, but is withdrawing from any further voluntary participation in a pre-plan 363 sale.

**AKABAS & SPROULE**
ATTORNEYS AT LAW

January 15, 2020
Paul A. Rubin, Esq.
Page three of three

    This letter shall not be, or be deemed to be, a waiver of any right or remedy of our client, whether at law or equity, each of which is hereby specifically reserved.

                                  Very truly yours,

                                  Seth A. Akabas

cc: 29 Beekman Corp.
    Lawrence Flick II, Esq.
    Ira Herman, Esq.
    Hanh Huynh, Esq.
    Nader Mobargha, Esq. (NMobargha@blmllp.com)
    Sanford Rosen, Esq. (SRosen@rosenpc.com)

# EXHIBIT B

# AKABAS & SPROULE
### ATTORNEYS AT LAW
488 Madison Avenue
11th Floor
New York, NY 10022
(212) 308-8505
FACSIMILE (212) 308-8582
WWW.AKABAS-SPROULE.COM

SETH A. AKABAS
MICHAEL H. SPROULE†
DAVID E. BAMBERGER

SENIOR COUNSEL
THOMAS A. CANOVA
MARTIN TODTMAN

JESSE E. GREENE

†ADMITTED NY & MA

COUNSEL
RUTH J. WITZTUM
HENRY RAKOWSKI
RICHARD A. MEDINA**
MARTIN L. LERNER***

LOUIS J. LAMATINA**
5105 FARVIEW AVENUE
PARAMUS, NJ 07652
(201) 291-1122

**ADMITTED NY & NJ
***ADMITTED NY & CA

January 22, 2020

By Email
Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Re:   In re Wansdown Properties Corporation N.V.; Case No. 19-13223 (SMB) –
      Residential Contract of Sale dated September 25, 2019 between Wansdown
      Properties Corporation N.V. and 29 Beekman Corp.

Dear Judge Bernstein:

Thank you again for Your Honor's time and guidance in the conference call last Friday. In accordance with Your Honor's suggestion we did inquire with our client, the Purchaser, whether it would extend the January 31, 2020 deadline in the Contract of Sale. At this time, Purchaser declines to extend the January 31, 2020 deadline. For clarity of all parties, the foregoing statement should not be construed as a statement that the Purchaser will not later, or is likely to or will later, extend such deadline.

At the same time, for the clarity of all parties, we reiterate Purchaser's position that it is entitled to the revisions requested to the Sale Order before Purchaser approves the Sale Order and that Purchaser is entitled to a Sale Order that it reasonably approves.

We fully understand Your Honor's reluctance to order such revisions without consent of Seller, and Your Honor was exactly correct in anticipating that Seller would not agree to changes to the Sale Order absent such extension, as Seller's counsel subsequently informed us after we provided to Seller's counsel the precise proposed revisions from which I was reading during the Friday conference call (minus the one revision proposed Friday with respect to which Seller correctly observed that such revision is in fact in the Sale Order in a different spot from the spot from which Seller also deleted it (i.e., it was in the previously submitted Sale Order in two places)).

AKABAS & SPROULE
ATTORNEYS AT LAW

January 22, 2020
Honorable Stuart M. Bernstein
Page two of four

    We nonetheless reiterate Purchaser's position that the Contract of Sale does not tie the deadline to Purchaser's review and approval of a Sale Order. Those provisions are in different sections, and they are not referenced to each other in any way. Moreover, although the Purchaser moved swiftly to review and provide comments on the proposed Sale Order, no provision in the Contract of Sale requires (although many such contracts do so require and Seller certainly could have negotiated deadlines that would require) Purchaser to perform such review with speed, within any particular time, or by any deadline; and Seller was the party that elected, for its own reasons, to request an adjournment of the hearing on the Sale Order motion, first from 10:00 a.m. on January 14, 2020, at which time plenty of flexibility would have remained for review and approval of a Sale Order, to 11:30 a.m. on such date, and then to 2:00 p.m. on such date and then to January 16, 2020. So Seller is the party that, without consulting Purchaser on any of such adjournments, created the time crunch, the adverse consequences of which it now wants to impose on Purchaser.[1]

    Seller is also the Party that decided not to share the most recent revised draft proposed Sale Order with Purchaser prior to submission, and Seller is the party that not only declined to join our request for a conference on the date when the revisions could have been made while still preserving the deadline and failed to call out the urgency of the situation, but, instead, affirmatively opposed the conference on that day, which Your Honor then scheduled for the next day.

    All of the revisions that Purchaser's bankruptcy counsel or title company proposed were either taken directly from the Contract of Sale or from prior drafts of the proposed Sale Order that Seller had previously accepted, so none can be claimed to be not reasonable, and, indeed, when Your Honor asked Seller's counsel for its view, it did not raise any objections except with regard to noting that two of the requested changes were in the Sale Order, and the request for the one of those changes that actually was in the Sale Order was omitted in the version of requests that we sent to Seller's counsel as described above.

---

[1] Those adverse consequences are material. The basis of Purchaser's acceding to Seller's insistence that the transaction be done through a bankruptcy proceeding (with all of its delays and costs), rather than last fall prior to any bankruptcy filing, was Seller's commitment to do the sale through a Plan, which would exempted the transaction from the "mansion tax." To secure that commitment, Purchaser expressly negotiated provisions in the Contract of Sale, including, but not limited to, a representation, not qualified by knowledge, that the expected proceeds of the sale under the Contract of Sale <u>would satisfy all claims</u> against Seller and that Seller would not resort to a 363 sale unless a Plan became "not possible." The exact scenario that Purchaser foresaw as a concern came to pass – a new claim, and the provisions Purchaser negotiated to preclude its having to pay the mansion tax in such scenario should take effect. Purchaser even voluntarily offered to close under a 363 sale if only Seller would relieve purchaser of the mansion tax – the very consequence that Purchaser feared and negotiated to avoid – and Seller refused such compromise.

AKABAS & SPROULE
ATTORNEYS AT LAW

January 22, 2020
Honorable Stuart M. Bernstein
Page three of four

Seller presumably picked its timing to make its motion, and made its determination to three times adjourn the hearing thereon, for its own benefit, knowing the risks that it was undertaking with regard to the deadline. Seller chose unilaterally to delete provisions from the Sale Order that were from the Contract of Sale and/or that Seller had previously acknowledged to be reasonable and had accepted, and Seller chose, again, unilaterally, to resubmit a revised proposed Sale Order without consulting Purchaser as to the changes Seller had made. Whether Seller's decisions in these regards were indeed beneficial to Seller, or not, does not give Seller the right to read into to the Contract of Sale provisions that are not there in order to transfer imposition the hardship of Seller's own decisions onto Purchaser.

We also again note, for the clarity of the parties receiving this letter, that Purchaser's review and provision of comments on the Sale Order shall not be, or be deemed to be, a waiver of Purchaser's assertion of multiple defaults by Seller under the Contract of Sale, notice of which has been provided to Seller, including, but not limited to, Seller's breach of (a) its "flat-footed" misrepresentation that the proceeds from a $10.3mm sale would satisfy all claims (Seller has since admitted that they cannot, which was the precise purported reason that Seller (prematurely, in Purchaser's view) abandoned the Bankruptcy Plan), and (b) a clause providing in effect that Seller would not resort to a 363 sale unless a Bankruptcy Plan became "not possible."

Even if, however, Purchaser's assertion of such defaults is incorrect and Purchaser is obligated to purchase under the Sale Order, Purchaser is still entitled, as explained above, to have the Sale Order conform to the requirements of the Contract of Sale and Purchaser's reasonable requests, despite the fact that Seller's actions, <u>and only Seller's actions</u>, worked to make Purchaser's review, input and approval impossible on a timely basis, and despite the fact that such conforming would result in the inability to effect the closing under the Contract of Sale prior to January 31, 2020.

We understand and acknowledge that Purchaser and Seller differ on these issues, and we do not think any further debate need be held on it. We do not know whether that difference will become material, but, in case it will be material, we trust that we have clearly stated Purchaser's position.

As a final point, we respond to a few assertions made by Seller's counsel on the Friday conference call. We concur with Your Honor's direction at the time for us to move directly to explaining the proposed revisions to the Sale Order while ignoring the Seller's counsel's assertions as, apparently, not relevant, but no one likes to have lingering open statements implying a negligent or careless course of conduct. Seller asserted among other points as follows:
   a. The undersigned had possession of a draft Sale Order on Monday, January 13th, and made none of the objections raised on Thursday, implying that the undersigned could have made the objections earlier. We note, however, that the draft the undersigned received on

AKABAS & SPROULE
ATTORNEYS AT LAW

January 22, 2020
Honorable Stuart M. Bernstein
Page four of four

    Monday included all of the provisions Purchaser is trying now to re-insert (as well as other provisions more favorable to Purchaser) and was, assuming Purchaser is incorrect that it is not bound to purchase at this time in a 363 Sale, acceptable to Purchaser.

  b. The undersigned was present at the hearing on Thursday, January 16th, and made none of the objections raised later that day, implying that the undersigned could have made the objections earlier. We note, however, that, at the hearing, no revised proposed Sale Order was presented different from the proposed Sale Order that had been provided to Purchaser the previous Monday.

  c. The undersigned was present at the hearing on Thursday, January 16th, and made no request that the Court direct Seller to provide Purchaser with an opportunity to review and approve a revised proposed Sale Order, implying that the undersigned should have requested such direction. We note, however, that the Contract of Sale requires such review and approval, and Seller was aware of that requirement and had previously submitted draft Disclosure Statements, Plans and Sale Orders to Purchaser for review and approval, and, indeed, had previously accepted virtually all of Purchaser's requested changes to these documents. So the undersigned had no basis for anticipating that Seller would breach its ongoing, and formerly acknowledged, obligations under the Contract of Sale, certainly not as would justify a request for Court intervention by way of a sort of declaratory judgment against a possible default by Seller for which Purchaser had no grounds to expect.

    I apologize for the length of this letter, but think a full statement of Purchaser's position is important for all parties in order to avoid any misunderstanding.

                                      Respectfully Submitted,

                                      Seth A. Akabas

cc: Chantel Barrett (Chantel_Barrett@nysb.uscourts.gov)
    29 Beekman Corp.
    Lawrence Flick II, Esq.
    Ira Herman, Esq.
    Hanh Huynh, Esq.
    Nader Mobargha, Esq. (NMobargha@blmllp.com)
    Sanford Rosen, Esq. (SRosen@rosenpc.com)
    Erica Aisner, Esq. (eaisner@kacllp.com)

# EXHIBIT C

# Hanh Huynh

| | |
|---|---|
| **From:** | Seth Akabas <sakabas@akabas-sproule.com> |
| **Sent:** | Wednesday, January 29, 2020 11:09 PM |
| **To:** | grgolsorkhi@gmail.com |
| **Cc:** | Lawrence F. Flick II (flick@blankrome.com); Paul Rubin; Hanh Huynh; Herman, Ira; Patel, Mitesh; Zucker, Evan; Levin, Mara B. |
| **Subject:** | RE: 29 Beekman - Contract of Sale - Notice of Extension |

To: Wansdown Properties Corporation N.V.
29 Beekman Place
New York, NY 10022
Attn: Mr. Gholam Reza Golsorkhi
President and Managing Director
grgolsorkhi@gmail.com

As you may know, we are counsel to 29 Beekman Corp, the Purchaser in the Contract of Sale, and we are sending this notice on behalf of Purchaser. This communication constitutes notice under Section 52.d of the Contract of Sale, as further explained below.

Purchaser also notes that Purchaser differs with virtually all of the argumentative assertions made by Seller's counsel, Mara Levin, Esq., in her letter dated January 27, 2020 sent with the email in the chain below.

Just as an example, and not by way of limitation, that letter purports to refute Purchaser's allegation of Seller's default in resorting to a "363" sale before a Bankruptcy Plan became "not possible," and such purported refutation, such as it is, is merely by Ms. Levin's **wishing** that the phrase "not possible" were followed and qualified in the Contract of Sale by the words she uses to qualify that very phrase in her letter (i.e., not possible ". . . **and** to have a final order by January 31, 2020" [emphasis added, not in original]), none of which wished-for words actually appears in that section of the Contract of Sale. That letter does not even allude to, let alone attempt to refute, Seller's default by its breach of its express, "flat-footed," i.e., unqualified by knowledge, representation in the Contract of Sale "that the net proceeds of a sale under this Contract would be sufficient to satisfy all claims against Seller," which representation was intended actually, and obviously, to guard against the very circumstances that occurred – Seller's under-calculation of the amount of claims and a new claim against Seller resulting in the need to revise Seller's Bankruptcy Plan and delay the closing under the Contract of Sale. The omissions in such letter are, therefore, far more instructive and illuminating than are its conclusory argumentative assertions, which assertions Purchaser, as noted above, considers wrong and/or misleading.

These Defaults have led to a lot of wrangling, none of it thus far productive, but further thought, Purchaser hopes, could possibly change Seller's thinking. As the undersigned informed your counsel, Purchaser does not want to purchase under the Contract of Sale and be responsible for the mansion tax, from which the sale under the Contract of Sale was supposed to have been exempt, nor does Purchaser, at this time, want to commit to a long extension of the closing condition to enable a new Bankruptcy Plan to be approved. What should have been happening is that Seller should have been working on such a Bankruptcy Plan, and Purchaser should as of Friday be in the position of holding an option to purchase under the Contract of Sale when such Bankruptcy Plan is approved. Seller apparently regretted that outcome under the Contract of Sale and has therefore worked since to warp the Contract of Sale to its will be wishing into it words/qualifications that it doesn't contain. Also, contrary to Ms. Levin's assertions in her letter that the appearance of another Buyer would be irrelevant, another buyer might be willing to close and absorb the mansion tax, or might be willing to commit to extend the Final Date sufficiently to enable Seller to conveniently get approval of a Bankruptcy Plan, thereby exempt a sale under it from the mansion tax, the latter of which possibilities would also enable the Debtor estate to garner an additionally approximately $200,000 in net proceeds as compared to a "363" sale at the same price.

For the reasons stated above, among others, and without waiving any of Seller's defaults under the Contract of Sale, notices of some of which been provided, and while hereby specifically reserving each right and remedy of Purchaser, whether at law or equity, for any such default and/or otherwise, Purchaser hereby exercises its right under Section 52.d of the Contract of Sale to Extend the Final Date to February 10, 2020.

A copy of this notice is being sent to BLANKROOM, 1271 Avenue of the Americas, New York, NY 10020, Attn: Lawrence F. Flick II, Esq., flick@blankrome.com, and, as a courtesy, to other counsel of Seller listed above.

Very truly yours,
Seth A. Akabas


----------
Seth A. Akabas, Esq.
Akabas & Sproule  *  Attorneys at Law
11th Floor
488 Madison Avenue
New York, New York 10022
(212) 308-8505  * www.akabas-sproule.com
----------
NOTICE IF YOU ARE NOT THE  ADDRESSEE:
This message may contain information that is PRIVILEGED AND CONFIDENTIAL.
If you are not the addressee, distribution, disclosure, copying, forwarding or further
READING IS PROHIBITED.  Notify sender immediately at above email address
and delete this message and any copies.   Thank you.
----------



**From:** Levin, Mara B. <MLevin@BlankRome.com>
**Sent:** Monday, January 27, 2020 9:23 PM
**To:** Seth Akabas <sakabas@akabas-sproule.com>
**Cc:** prubin@rubinlawllc.com; hhuynh@rubinlawllc.com; Herman, Ira <IHerman@blankrome.com>; Patel, Mitesh <mpatel@BlankRome.com>; Zucker, Evan <EZucker@blankrome.com>
**Subject:** RE: 29 Beekman - Contract of Sale - Notice of Defaults

Seth, Please see attached response to your email below.


**Mara B. Levin** | **Partner** | BLANK**ROME**
1271 Avenue of the Americas | New York, NY 10020
O: 212.885.5292 | M: 917.656.4656 | mlevin@blankrome.com


**From:** Seth Akabas <sakabas@akabas-sproule.com>
**Sent:** Friday, January 24, 2020 5:28 PM
**To:** Levin, Mara B. <MLevin@BlankRome.com>
**Cc:** prubin@rubinlawllc.com; hhuynh@rubinlawllc.com; Herman, Ira <IHerman@blankrome.com>; Patel, Mitesh <mpatel@BlankRome.com>; Zucker, Evan <EZucker@blankrome.com>
**Subject:** RE: 29 Beekman - Contract of Sale - Notice of Defaults

Mara,

2

We received your letter confirming that Seller differs with our understanding of the Contract of Sale as to the necessity of revisions to the Sale Order, which, as you may know, we knew because Paul so informed us, and which we expressly acknowledged in our prior correspondence with the Court.

You have not, however, mentioned other breaches described in detail in an email that I sent to Paul on January 17, 2020 asserting breaches by Seller under the Contract of Sale. We understand that Seller differs in its view of those asserted breaches as well, again, because Paul so informed us (and indeed we also expressly acknowledged such difference in our prior correspondence with the Court), but no one for Seller has provided any basis whatsoever as grounds for Seller's differing view on those asserted breaches, and we would be interested in your response to those other breaches to the extent you are inclined to provide them, and we and Purchaser would take such response into consideration in charting the next steps.

Purchaser has, to our knowledge, complied thus far with all of its obligations under the Contract of Sale; indeed, it has been responsive in all back and forth and gone beyond its duty in several instances, including allowing purchaser price escrow to be released to assist Seller with property expenses, and it has offered to waive the Seller's defaults for a reasonable cure of making Purchaser whole, and in other ways. Purchaser has never repudiated any of its obligations under the Contract of Sale.

As to a closing date, a lot remains to be done or that could transpire between now and then, including, in the latter category, but not limited to, Seller could cure its breaches, another buyer could appear (according to court testimony a number have been surveying the property during the most recent week or so), the deadline could be adjourned.

This email shall not be or be deemed to be a waiver of any right or remedy of Purchaser, whether at law or equity, each of which is hereby specifically reserved.

Regards,
Seth

----------
Seth A. Akabas, Esq.
Akabas & Sproule  *  Attorneys at Law
11th Floor
488 Madison Avenue
New York, New York 10022
(212) 308-8505  * www.akabas-sproule.com
----------
NOTICE IF YOU ARE NOT THE  ADDRESSEE:
This message may contain information that is PRIVILEGED AND CONFIDENTIAL.
If you are not the addressee, distribution, disclosure, copying, forwarding or further
READING IS PROHIBITED.  Notify sender immediately at above email address
and delete this message and any copies.   Thank you.
----------

**From:** Levin, Mara B. <MLevin@BlankRome.com>
**Sent:** Thursday, January 23, 2020 7:13 PM
**To:** Seth Akabas <sakabas@akabas-sproule.com>
**Cc:** Jesse Greene <JGreene@akabas-sproule.com>; prubin@rubinlawllc.com; hhuynh@rubinlawllc.com; Herman, Ira <IHerman@blankrome.com>; Patel, Mitesh <mpatel@BlankRome.com>; Zucker, Evan <EZucker@blankrome.com>
**Subject:** 29 Beekman

3

Please see the attached for your review.

**Mara B. Levin** | BLANKROME
1271 Avenue of the Americas | New York, NY 10020
O: 212.885.5292 | M: 917.656.4656 | mlevin@blankrome.com

*******************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*******************************************************************************************

# EXHIBIT D

# Hanh Huynh

| | |
|---|---|
| **From:** | Seth Akabas <sakabas@akabas-sproule.com> |
| **Sent:** | Monday, February 10, 2020 10:31 AM |
| **To:** | grgolsorkhi@gmail.com |
| **Cc:** | Lawrence F. Flick II (flick@blankrome.com); Paul Rubin; Hanh Huynh; Herman, Ira; Patel, Mitesh; Zucker, Evan; Levin, Mara B. |
| **Subject:** | RE: 29 Beekman - Contract of Sale - Notice of Extension |

To: Wansdown Properties Corporation N.V.
29 Beekman Place
New York, NY 10022
Attn: Mr. Gholam Reza Golsorkhi
President and Managing Director
grgolsorkhi@gmail.com

The notice previously sent this morning included a typo – "March 10, 2020" was intended to be "May 10, 2020," corrected in the text of the notice immediately below.  We apologize for any confusion.

As you may know, we are counsel to 29 Beekman Corp, the Purchaser in the Contract of Sale.  This letter constitutes notice under Section 52.d of the Contract of Sale, as further explained below.

In accordance with Seller's requests, and without waiving any of Seller's defaults under the Contract of Sale, notices of some of which been provided, and while hereby specifically reserving each right and remedy of Purchaser, whether at law or equity, for any such default, Purchaser hereby exercises its right under Section 52.d of the Contract of Sale to Extend the Final Date to May~~rch~~ 10, 2020. We understand that this extension, per Seller's prior requests, will provide comfortably sufficient time to file and get approval for a Bankruptcy Plan as contemplated in the Contract of Sale.

A copy of this notice is being sent to BLANKROOM, 1271 Avenue of the Americas, New York, NY 10020, Attn:  Lawrence F. Flick II, Esq., flick@blankrome.com, and, as a courtesy, to other counsel of Seller listed above.

Very truly yours,
Seth A. Akabas

----------
Seth A. Akabas, Esq.
Akabas & Sproule  *  Attorneys at Law
11th Floor
488 Madison Avenue
New York, New York 10022
(212) 308-8505  *  www.akabas-sproule.com
----------
NOTICE IF YOU ARE NOT THE  ADDRESSEE:
This message may contain information that is PRIVILEGED AND CONFIDENTIAL.
If you are not the addressee, distribution, disclosure, copying, forwarding or further
READING IS PROHIBITED.  Notify sender immediately at above email address
and delete this message and any copies.   Thank you.
----------