RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WANSDOWN PROPERTIES CORPORATION N.V., | : | Case No.:  19-13223 (SMB) |
| | : | |
| Debtor. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF GHOLAM REZA GOLSORKHI
IN SUPPORT OF DEBTOR'S CASH COLLATERAL MOTION**

GHOLAM REZA GOLSORKHI, hereby states as follows under penalty of perjury:

1.  I am the Managing Member and President of Wansdown Properties Corporation N.V. (the "Debtor"), and I am familiar with the business and affairs of the Debtor.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2.  I submit this Affidavit in support of the Debtor's motion (the "Motion") for entry of an interim and final orders authorizing the Debtor to use cash collateral, and scheduling a final hearing on the Motion.

3.  On January 16, 2020, this Court entered an order authorizing the Debtor to assume that certain *Residential Contract of Sale* dated September 25, 2019 (together with exhibits and riders thereto, the "Purchase Agreement") and to sell the Debtor's townhouse

located at 29 Beeman Place, New York, New York (the "Property") to 29 Beekman Corp. (the "Purchaser"). Based on the January 31, 2020 deadline to close under the Purchase Agreement (subject to the Purchaser's right to extend the closing no later than February 15, 2020), the Debtor expected the sale to close by January 31, 2020 (or at the very latest, February 15, 2020). But a closing did not occur, and the Debtor has delivered notice to the Purchaser of the termination of the Purchase Agreement.

4. Now, rather than holding sale proceeds, the Debtor continues to own a property that requires upkeep and maintenance. The Purchaser's failure to close has put the Debtor in a position where it must seek authorization to expend cash collateral to pay necessary expenses, on an emergency basis, in order to maintain the Property, and on a less exigent basis, to pay other necessary expenses as listed on the budget (the "Budget") annexed as Exhibit 1 to the proposed interim order. I have reviewed and assisted with the preparation of the Budget.

5. The Debtor proposes to use cash collateral to pay necessary expenses to maintain the Property, as set forth in the Budget. The Debtor's proposed expenditure relate to, *inter alia*, utilities critical to the maintenance of the Property (notably, electric and gas services provided by Con Edison, without which the Property is under risk of damage from burst water pipes and similar property-related risks), and insurance coverage on the Property. The total amount requested in the Budget is approximately $119,000 (assuming certain monthly expenditures are made for a three month period leading to the sale of the Property), a modest amount considering the significant losses to the Debtor if these expenditures were not approved and the Property were to suffer damage. On an interim basis, the Debtor seeks authorization to use cash collateral to pay the most urgent of the expenses—electricity, telephone and insurance—in the amount of approximately $21,000.

6. The use of cash collateral as requested by the Debtor is necessary, appropriate and, indeed, essential to the Debtor's reorganization efforts. The Property is the Debtor's sole significant asset, and proceeds from the sale of the Property will be used to fund a chapter 11 plan. The Debtor must preserve the value of the Property, and the expenses identified in the Budget are necessary and critical to the Debtor's ability to maintain the Property through the marketing and sale process.

7. Among the most urgent of the expenses is the electricity and gas utilities due and owing to Con Edison. The Debtor is at risk of a shutdown of electric and gas services, which would cause the Debtor irreparable harm. For example, without heat and electricity, the Property is at risk of incurring significant property damage from water pipes freezing and bursting. Without electricity, the Debtor's ability to market the Property is severely hampered if it cannot turn the lights on to show interested buyers the Property. The Property has seven floors accessible by elevator; electricity is required to operate the elevator and is thus critical to the Debtor. Similarly, the Property must remain insured to comply with the Debtor's obligations as a debtor in possession and to protect the estate from potential loss.

8. It is vital to the success of the Debtor's reorganization efforts that access to cash collateral be obtained immediately. Absent the immediate ability to use cash collateral, the Debtor faces a palpable risk of irreparable harm to the Property, as outlined above and in the Motion. The Debtor's ability to maximize value for the estate through a sale of the Property will be severely prejudiced, impeding its ability to reorganize.

Dated: New York, New York
       February 18, 2020

                                                        */s/ Gholam Reza Golsorkhi*