**Hearing Date and Time:  April 9, 2020 at 10:00 a.m.**
**Objection Deadline:  April 2, 2020**

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
In re:                                              :    Chapter 11
                                                    :
WANSDOWN PROPERTIES CORPORATION       :    Case No.:  19-13223 (SMB)
N.V.,                                               :
                                                    :
                      Debtor.                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON DEBTOR'S APPLICATION FOR AN ORDER**
**AUTHORIZING THE RETENTION OF COMPASS AND ROSEWOOD REALTY**
**GROUP AS REAL ESTATE BROKERS PURSUANT TO SECTIONS 327(a) AND 328(a)**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014(a)**

        **PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the application (the

"Application")[1] for entry of an order approving the retention of Urban Compass, Inc. d/b/a

Compass ("Compass") and Rosewood Realty Group ("Rosewood," and together with Compass,

the "Brokers"), as exclusive real estate brokers for the Debtor pursuant to sections 327(a) and

328(a) of title 11 of the United States Code, Rules 2014 of the Federal Rules of Bankruptcy

Procedure, and Local Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of

New York, has been scheduled to be heard before the Honorable Stuart M. Bernstein, United

---

[1] A copy of the Application, without exhibits, is attached to this notice.  The exhibits are filed on the docket and available for viewing at the Court's ECF website at https://ecf.nysb.uscourts.gov/ for parties with PACER credentials.  You may also obtain copies of the exhibits by contacting the undersigned counsel for the Debtor at hhuynh@rubinlawllc.com.

States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, on **April 9, 2020, at 10:00 a.m.**

**PLEASE TAKE FURTHER NOTICE** that objections the Application, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court, with a courtesy copy to the Bankruptcy Court, and shall be served upon (a) counsel for the Debtor, Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001 (Attn.: Paul A. Rubin); (b) the Office of the United States Trustee, 201 Varick Street, New York, NY 10014 (Attn.: Paul Schwartzberg); and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **April 2, 2020**.

Dated: New York, New York
      March 12, 2020

RUBIN LLC

By: _  /s/ Paul A. Rubin_
      Paul A. Rubin
      Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
In re:                                              :    Chapter 11
                                                    :
WANSDOWN PROPERTIES CORPORATION        :    Case No.:  19-13223 (SMB)
N.V.,                                               :
                                                    :
                        Debtor.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION OF COMPASS AND ROSEWOOD REALTY GROUP AS REAL ESTATE BROKERS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014(a)

Wansdown Properties Corporation N.V. (the "Debtor"), the debtor and debtor in possession herein, by its counsel, Rubin LLC, hereby submits this application (the "Application") for entry of an order in the form annexed hereto as Exhibit A approving the retention of Urban Compass, Inc. d/b/a Compass ("Compass") and Rosewood Realty Group ("Rosewood," and together with Compass, the "Brokers"), as exclusive real estate brokers for the Debtor pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "Local Rules").  In support of the Application, the Debtor respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      The Debtor was unsuccessful in its efforts to sell its townhouse located at 29 Beekman Place, New York, New York 10022 (the "Property") in a private sale to 29 Beekman Corp. (the "Purchaser") in accordance with the sale order entered by the Court on January 16, 2020.

2.      Because a sale of the Property to the Purchaser did not close, the Debtor has determined that it is in the best interest of the Debtor, its estate, and creditors to market the Property for sale at auction.  By this Application, the Debtor seeks approval of its retention of the Brokers to assist the Debtor with the marketing and sale of the Property.  Compass was retained by the Debtor before this case was commenced, and Rosewood's brokers have experience and expertise in marketing properties of debtors in bankruptcy.  The Debtors believe that the Brokers can play an important role in maximizing value to the Debtor's estate through a sale of the Property, the net proceeds of which will be used to fund a chapter 11 plan.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction to hear this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5.      The statutory predicates for relief requested herein are sections 327(a) and 328 of the Bankruptcy Code, and Rules 2014 and 2016 of the Bankruptcy Rules.

## BACKGROUND

6.    On October 8, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, and an order for relief under section 301 of the Bankruptcy Code was entered in this case (the "Chapter 11 Case").

7.    The Debtor has been authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8.    No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the Chapter 11 Case.

9.    The Debtor was incorporated in 1979 under the laws of Curacao, in accordance with Article 38 of the Commercial Code of the Netherlands Antilles and continues to exist under the laws of the Netherland Antilles.  The Debtor's sole significant asset is the Property.  The Property is vacant and does not have any tenants.  The Property does not generate any operating revenue.

10.   Prior to the Petition Date, the Debtor worked with Charlie Attias, a licensed real-estate broker at the Corcoran Group, to market and sell the Property.  In or around September 2019, Mr. Attias left Corcoran Group and began working at Compass.  Following his move to Compass, the Debtor and Compass entered into an Exclusive Townhouse Sales Agreement dated September 7, 2019 (the "Compass Agreement") with respect to the exclusive right of Compass to sell the Property.  The Compass Agreement provides for compensation of a 5% commission.

11.   Although Mr. Attias has shown the Property to a number of interested parties, no buyer (other than the Purchaser with whom the Debtor failed to close) has made an offer to purchase the Property.  Thus, the Debtor has determined that the marketing of the Property

would benefit from the services of Rosewood as a co-broker. The Debtor has negotiated with both Compass and Rosewood on the terms of their retention as co-brokers to the Debtor, as memorialized in the *Retention Agreement* dated as of March 5, 2020, between and among Compass, Rosewood and the Debtor (the "Listing Agreement"). Compass has agreed that the Listing Agreement will supersede and replace the Compass Agreement. Compass will not seek any compensation or assert any claim against the Debtor based on the Compass Agreement, and will only seek to be paid under the terms of the Listing Agreement, subject to this Court's approval of the Application.

12.     The Property is encumbered by a mortgage in favor of National Investment Bank (N.A.) (the "Mortgage Lender"). The Mortgage Lender has filed a proof of claim in the Chapter 11 Case asserting a fully secured claim in the amount of $5,627,088.52, inclusive of interest, default interest, and fees. According to a payoff letter provided by the Mortgage Lender, its claim as of February 10, 2020 is $5,846,627.60. Default interest on the Mortgage Lender's claim accrues at 10% per annum, or approximately $50,000 per month.

13.     Thus, the carrying costs associated with the Property, including interest on the Mortgage Lender's claim, are significant. Any delay in selling the Property is highly prejudicial to the Debtor and its estate.

## **RELIEF REQUESTED**

14.     By this Application, pursuant to sections 327 and 328 of the Bankruptcy Code, the Debtor seeks to employ and retain the Brokers as exclusive real estate agents and brokers for the Debtor's Property pursuant to the terms of the Broker's Listing Agreement through the date that is six months after entry of the order approving this Application. In light of the circumstances of this Chapter 11 Case, the Debtor requires the services of skilled real estate brokers with extensive experience with high-end luxury residential properties.

15.     As the Debtor's real estate brokers for the Property, the Brokers will assist in the marketing and sale of the Property.  The Debtor believes the Brokers' retention is necessary given the Debtor's need to sell the Property in a prompt, efficient and cost-effective manner.

### SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE

16.     Pursuant to the terms of the Listing Agreement, the Brokers will use their commercially reasonable efforts to obtain a satisfactory purchaser for the Property on such terms as are acceptable to the Debtor.  The Brokers will negotiate the business terms of each purchase and sale agreement on behalf of the Debtor, subject to the Debtor's review and approval.  The Brokers will cooperate with other licensed real estate brokers representing purchasers subject to the terms of the Listing Agreement.

17.     The services will be rendered by the Brokers in connection with the proposed engagement are not duplicative of the services to be performed by any of the Debtor's other retained professionals or advisors.  The Debtor believes the foregoing services are critical to the success of the proposed sale of the Property.

### THE BROKERS' QUALIFICATIONS

18.     As set forth more fully in the Corbin Declaration and the Attias Declaration, the Brokers are well-suited to provide the real estate services required by the Debtor.  The Brokers are licensed real estate brokers in and by the State of New York with substantial experience in the marketing and sale of high-end residential properties such as the Property here.  The Debtor believes that the Brokers will be able to effectively and efficiently market the Property.

### PROFESSIONAL COMPENSATION

19.     As set forth in Section 4 of the Listing Agreement, upon the sale of the Property, subject to clause (c) below, the Brokers will be paid an aggregate commission (the "Commission") of five percent (5%) of the gross purchase price of the Property, with each

5

Broker to receive 50% of the Commission at the closing on any transaction for the Property,

upon the occurrence of the following:

(a)     Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the Debtor engages a different broker or advisor to close the Transaction; or

(b)     If a sale, exchange or other conveyance of the Property or ownership or control of the Property is made or takes place, within one hundred eighty (180) days after expiration or termination of the Term (the "Additional Period"), to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but (i) with whom a Broker has negotiated concerning the Property, or to whose attention the Property has been brought by a Broker, or who was introduced to Debtor by a Broker during the Term, and (ii) to whom such Broker has shown the Property, during the Term (each such Prospective Purchaser shall hereinafter be referred to as an "Active Prospect").  Within five (5) days after the expiration or termination of the Term, each Broker shall deliver to Debtor a true, correct and complete list of Active Prospects.

(c)     Notwithstanding anything to the contrary contained in the Listing Agreement, if a sale, exchange or other conveyance of the Property, or ownership or control of the Property, is made or takes place, whether during the Term or the Additional Period, to a Prospective Purchaser (i) listed on Exhibit A to the Listing Agreement and (ii) with whom Compass has visited the Property and to whom Compass has shown the Property, then the Commission shall not be paid to the Brokers in accordance with the allocation set forth above; rather, the Commission shall be paid as follows: sixty percent (75%) of the Commission shall be paid to Compass and forty percent (25%) of the Commission shall be paid to Rosewood, in each case, at the Closing, without further order of the Court, by the Prospective Purchaser.

20.     The Debtor seeks approval of the Listing Agreement pursuant to sections 327(a)

and 328(a) of the Bankruptcy Code.  Section 328(a) provides, in relevant part, that a debtor "with

the court's approval, may employ or authorize the employment of a professional person under

section 327 … on any reasonable terms and conditions of employment, including on a retainer,

on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

21.     The Debtor submits that the fee structure set forth in the Listing Agreement is reasonable under section 328(a) of the Bankruptcy Code in light of (a) the nature and scope of services to be provided by the Brokers, (b) industry practice with respect to the fee structure proposed by the Brokers, (c) market rates charged for comparable services both in and out of chapter 11, and (d) the Brokers' substantial experience in the New York real estate market.

22.     In addition, the terms of the Listing Agreement were negotiated in good faith and at arms-length between the Debtor and the Brokers, and reflect the Debtor's evaluation of the value and expertise of the work to be performed by the Brokers.

## DISINTERESTEDNESS

23.     The Debtor seeks approval of the fee arrangement in the Listing Agreement and authority to retain and employ the Brokers as the Debtor's brokers in this Chapter 11 Case under section 327(a) of the Bankruptcy Code.  Section 327(a) provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties." 11 U.S.C. § 327(a).

24.     To the best of the Debtor's knowledge, and as set forth in more detail in the Corbin Declaration and the Attias Declaration, and subject to the disclosures made therein, the Brokers (a) are each a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (b) do not hold or represent an interest adverse to the Debtor or the Debtor's estate.

25.     Furthermore, except as disclosed in the Corbin Declaration and the Attias Declaration, the Brokers have indicated that, based on the results of their research conducted to

date, and to the best their knowledge, neither of the Brokers, nor any employee thereof providing

the services to the Debtor under the Listing Agreement, has any connection with the Debtor, any

creditors of the Debtor's estate, or any other parties-in-interest or their respective attorneys and

accountants, or other advisors, or the U.S. Trustee, or any person employed in the Office of the

U.S. Trustee.

26.     The Brokers were not owed any amounts by the Debtor as of the Petition Date

and do not hold a claim against the Debtor's estate.  The Brokers have indicated that if they

discover any information that is contrary to or pertinent to the statements made in the Corbin

Declaration and the Attias Declaration, the Brokers will promptly disclose such information to

this Court and the U.S. Trustee.

27.     The Debtor has been advised that each of the Brokers has not agreed to share with

any person or firm, other than its own principals and employees, the compensation to be paid by

the Debtor for the professional services rendered in connection with this case.

## FEE APPLICATION REQUIREMENTS

28.     The Debtor respectfully submits that, because the Brokers' compensation is

results oriented and directly related to benefits received by the Debtor's estate as a result of the

sale transaction, requiring the Brokers to filed detailed time records and periodic fee applications

in accordance with sections 330 and 331 of the Bankruptcy Code, and in compliance with

Bankruptcy Rule 2016 and General Order M-447, Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Fee

Guidelines") is unnecessary under the circumstances.  The Debtor has been advised by the

Brokers that it is not their practice to keep detailed time records similar to those customarily kept

by attorneys and other professionals who are compensated on an hourly basis.

29.     As set forth herein, the Brokers are being retained and will be employed by the Debtor to perform a highly specialized and discrete task and accordingly, will not be compensated based upon time and effort expended.  Instead, the Brokers will be compensated based on a percentage of the proceeds of any final transaction consummated in connection with the Property.  Requiring the Brokers to record and submit detailed time entries in light of the nature of the services to be rendered by the Brokers and the flat fee, percentage-based fee structure proposed under the Listing Agreement would be unduly burdensome to the Brokers. The Debtor further acknowledges and agrees that the ultimate benefit to the Debtor's estate from the Brokers' services likely could not be measured merely by reference to the number of hours to be expended by the Brokers' professionals in the performance of such services.  Accordingly, the Debtor requests that the Brokers be relieved of the requirement to maintain detailed time records or file interim fee applications, and any fee application filed by the Brokers not be subject to review under section 330 of the Bankruptcy Code.

## NOTICE

30.     Notice of this Application has been provided to (i) the Office of the United States Trustee, (ii) the Debtor's prepetition secured creditors, and (iii) the Debtor's unsecured creditors. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

31.     No previous application for the relief requested herein has been made in this or any other court.

WHEREFORE, the Debtor respectfully requests the Court enter an order substantially in the form annexed hereto as <u>Exhibit A</u> approving the retention of the Brokers as the Debtor's exclusive real estate brokers and granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        March 12, 2020

                                    RUBIN LLC

                                    By:    */s/ Paul A. Rubin*
                                           Paul A. Rubin
                                           Hanh V. Huynh

                                    345 Seventh Avenue, 21st Floor
                                    New York, New York 10001
                                    Tel: 212.390.8054
                                    Fax: 212.390.8064
                                    prubin@rubinlawllc.com
                                    hhuynh@rubinlawllc.com

# EXHIBIT A

# (PROPOSED ORDER)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|   |   |   |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| WANSDOWN PROPERTIES CORPORATION N.V., | : | Case No.: 19-13223 (SMB) |
|  | : |  |
| Debtor. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER GRANTING DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION OF COMPASS AND ROSEWOOD REALTY GROUP AS REAL ESTATE BROKERS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014(a)

Upon the application (the "Application")[1] of Wansdown Properties Corporation N.V. (the "Debtor") for entry of an order approving the retention of Urban Compass, Inc. d/b/a Compass ("Compass") and Rosewood Realty Group ("Rosewood," and together with Compass, the "Brokers"), as exclusive real estate brokers for the Debtor pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"); and upon the Declaration of Greg Corbin, and the Declaration of Charlie Attias in support of the Application; and a hearing on the Application having been held on March [  ], 2020 (the "Hearing"); and the Court having reviewed the Application, the Corbin Declaration and the Attias Declaration; and the Court being satisfied based on the representations made in the Application, Corbin Declaration, and the Attias Declaration that the Brokers are each a "disinterested person" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code; and the relief requested in the Application is

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

necessary and in the best interests of the Debtor's estate, creditors, and other parties-in-interest; and upon the record of the Hearing; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it further appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Application having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and upon the record herein; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED THAT**,

1.      The Application is GRANTED as set forth herein.

2.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014, the Debtor is hereby authorized to employ and retain the Brokers as the Debtor's exclusive real estate brokers to assist with the sale and disposition of the Property on the terms set forth in the Application, the Listing Agreement, the Corbin Declaration and the Attias Declaration.

3.      The terms and provisions of the Listing Agreement are reasonable and are approved, and the Debtor is authorized to (i) compensate and reimburse the Brokers in accordance with the Listing Agreement, and (ii) pay the Brokers their commission directly from the sale proceeds of the Property or as otherwise provided for in the Listing Agreement.  The Broker's commission remains subject to the filing of a final fee application by the Brokers in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders entered by the Court; *provided, however,* that the Brokers shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that the Brokers' commission and

expenses shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

4.      Any unpaid commission shall be treated as an administrative expense claim under section 507(a)(2) of the Bankruptcy Code.

5.      To the extent the Application, the Listing Agreement, the Corbin Declaration or the Attias Declaration is inconsistent with this Order, the terms of this Order shall govern.

6.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

7.      Notwithstanding any stay that might be imposed by Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

8.      The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

9.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

NO OBJECTION:


_____
Office of the United States Trustee

Dated:  New York, New York
        March [   ], 2020


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE


3

# EXHIBIT B

# (LISTING AGREEMENT)

## RETENTION AGREEMENT

This Retention Agreement ("Agreement") is between **WANSDOWN PROPERTIES CORPORATION N.V.** ("Debtor"), **ROSEWOOD REALTY GROUP** ("Rosewood") and **URBAN COMPASS, INC. D/B/A COMPASS** ("Compass"). Rosewood and Compass may be referred to collectively hereinafter as the "Brokers" and each of Rosewood and Compass may be referred to individually hereinafter as a "Broker." Debtor hereby employs and retains the Brokers, granting the Brokers for a period of time as set forth herein to act as special real estate advisors for the Debtor having, among other things, the sole and exclusive and irrevocable right and authority to negotiate the sale of all or any portion of the real property know as, and/or air rights pertaining to, 29 Beekman Place, New York, New York 10022 (all or a portion of the property and/or air rights related thereto are referred to hereinafter as the "Property" and such sale is referred to hereinafter as the "Transaction").

1. Subject to approval of the Bankruptcy Court (defined hereinafter), the term of Debtor's retention of the Brokers shall be effective and commence on the date this Agreement is executed by all of the parties to this Agreement and shall continue in effect for one hundred eighty (180) days from the date of entry an order of the Bankruptcy Court approving this Agreement (the "Term"). Thereafter, the Term shall be automatically extended for successive thirty (30) day periods until terminated by either Debtor or a Broker upon at least thirty (30) days advance written notice to the other parties. For the avoidance of doubt, a termination of this Agreement by Debtor or a Broker pursuant to the immediately prior sentence shall result in a termination of this Agreement with respect to all of the parties to this Agreement.

2. Intentionally Omitted.

3. Intentionally Omitted.

4. Subject to Section 4(c) below, the Brokers will be paid, as their full and complete compensation for all brokerage commissions and expenses for all services that have been rendered and that will be rendered in connection with the Transaction, an aggregate commission equal to five percent (5%) of the gross purchase price of the Property (the "Commission") as follows: fifty percent (50%) of the Commission shall be paid to Compass and fifty percent (50%) of the Commission shall be paid to Rosewood, in each case, at the closing of the Transaction (the "Closing"), without further order of the Court, by the Prospective Purchaser (as defined hereinafter), upon the occurrence of any of the following events:

   a. Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the Debtor engages a different broker or advisor to close the Transaction; or

   b. If a sale, exchange or other conveyance of the Property or ownership or control of the Property is made or takes place, within one hundred eighty (180) days after expiration or termination of the Term (the "Additional Period"), to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but (i) with whom a Broker has negotiated concerning the Property, or to whose attention the Property has been brought by a Broker, or who was introduced to Debtor by a Broker during the Term, and (ii) to whom such Broker has shown the Property, during the Term

1

## RETENTION AGREEMENT

(each such Prospective Purchaser shall hereinafter be referred to as an "Active Prospect"). Within five (5) days after the expiration or termination of the Term, each Broker shall deliver to Debtor a true, correct and complete list of Active Prospects.

c.  Notwithstanding anything to the contrary contained in this Agreement, if a sale, exchange or other conveyance of the Property, or ownership or control of the Property, is made or takes place, whether during the Term or the Additional Period, to a Prospective Purchaser (i) listed on Exhibit A and (ii) with whom Compass has visited the Property and to whom Compass has shown the Property, then the Commission shall not be paid to the Brokers in accordance with the allocation set forth in Section 4 above; rather, the Commission shall be paid as follows: seventy-five percent (75%) of the Commission shall be paid to Compass and twenty-five percent (25%) of the Commission shall be paid to Rosewood, in each case, at the Closing, without further order of the Court, by the Prospective Purchaser.

For these purposes, a "Prospective Purchaser" shall include partnerships, joint ventures, limited liability companies, corporations, trusts or other similar entities which the prospective buyer represents, is involved with, or in which it holds an ownership, management or beneficial interest.  For the purposes of this Agreement, the term "gross purchase price" includes the sum of the total consideration transferred to, or for the benefit of, the Debtor and value of debt and liabilities assumed and liabilities reduced, and any credit bid by a secured lender, and any consideration transferred to or for the benefit of the secured lender for the assignment of its credit bid or claim, and contingent, earned or other consideration paid or payable, directly or indirectly, in connection with a sale or transfer of title to the Property.  For the purposes of this Agreement, the gross purchase price and the Commission due to the Brokers will not be offset or reduced by the costs of advertising, the Debtor's legal fees, any break-up fees, broker's expenses or closing costs and/or closing adjustments, including any adjustments and/or payments of whatever kind to lienholders, secured parties or offerors.  Debtor will not close on any sale or transfer of the Property if the Brokers are not paid at the Closing the Commission to which the Brokers are entitled hereunder, unless the Bankruptcy Court requires Brokers to file a fee application, in which case Brokers will paid following entry of an order authorizing their payment.

For the avoidance of doubt, if Debtor enters into a contract for the sale of the Property, the result of which would entitle the Brokers to the Commission hereunder at the Closing of such sale, and a higher or better offer is approved by the Bankruptcy Court, then regardless of who may be the successful purchaser, the Brokers will be entitled to a Commission pursuant to the terms of this Agreement, as, if and when the Closing with the successful purchaser occurs, based on the successful purchaser's gross purchase price.

Each Broker agrees that Debtor may withdraw from negotiations or agreements with any Prospective Purchaser and refuse to continue therewith at any time, for any reason whatsoever, without notice to the Brokers and without any liability to the Brokers of any kind for any compensation or damages.

Each Broker agrees that in no event shall Debtor be obligated to institute any legal or other proceedings to compel a Prospective Purchaser to conclude a transaction in order fulfill any of said Prospective Purchaser's obligations, in the event of a default or breach by said Prospective Purchaser.

5.  All inquiries, offers, expressions of interest and communications from principals, outside brokers and other parties or professionals will be re-directed and referred to a Broker by Debtor, its principals, officers, counsel,

2

**RETENTION AGREEMENT**

accountants and other professionals or representatives.  Debtor agrees to conduct all negotiations through the Brokers exclusively and to advise all interested persons of this exclusive right. Subject to Bankruptcy Court approval of this Agreement, each Broker will be authorized to act as agent for Debtor, and to advertise, market, negotiate and coordinate the closing on the sale or refinancing of the Property.  In order to coordinate efforts concerning a possible Transaction, neither Debtor nor any representative of Debtor will initiate any discussions with a third party regarding a potential Transaction involving the Property except through a Broker.

6.    The Brokers may, at their own discretion, seek the cooperation of other licensed real estate brokers and professionals in the sale or disposition of the Property. If the Transaction is effected by third-party broker cooperating with a Broker at such Broker's request, then at Closing and pursuant to this Agreement, the Brokers will be paid the Commission, out of which the requesting Broker shall compensate such third-party broker with an amount previously agreed upon between the requesting Broker and such third-party broker pursuant to a separate written agreement between the requesting Broker and such third-party broker.  In such situation, such requesting Broker will disclose any such agreement in a statement filed with the Bankruptcy Court at least thirty (30) days prior to the Closing. For the avoidance of doubt, Debtor shall have no liability for any commissions or otherwise with respect to any broker or similar real estate professional other than the Brokers, and the Broker requesting any such broker's or professionals assistance, participation or involvement shall have sole responsibility for the payment of commissions, if any, earned by said other brokers or professionals dealing or claiming to have dealt with such Broker.  Furthermore, each Broker agrees to indemnify Debtor and hold Debtor harmless from, for and against any and all damage and expense (including, without limitation, reasonable attorneys' fees and expenses) that Debtor may suffer or incur as a result of any claim made against Debtor with respect to the Transaction by any broker or similar real estate professional whose claim is founded in whole or in part on the acts of, or dealings with such Broker, limited, however, to the amount of the Commission actually received by such Broker.

7.    Intentionally Omitted.

8.    Debtor will, promptly after its execution of this Agreement, file an application and proposed order seeking from the Bankruptcy Court approval of its employment of the Brokers pursuant to the terms of this Agreement, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code.  Debtor agrees and acknowledges to attach a complete copy of this Agreement to the application.  Debtor will provide the Brokers with the employment application and proposed order authorizing Debtor's employment of Brokers sufficiently in advance of their filing in order for the Brokers to have ample time to review and discuss any comments they may have with Debtor, and the employment application must be acceptable to the Brokers in their discretion.  The proposed order will include, without limitation, the following terms and conditions: (a) finding that none of the fees or commissions to the Brokers hereunder constitute a "bonus" under applicable law; (b) directing that Brokers will be exempt from keeping time records for its work hereunder (as the Brokers will not be billing on an hourly basis; (c) finding that the terms and conditions of this Agreement are reasonable. and (d) directing that any unpaid commissions, fees, and marketing expenses owed to the Brokers shall be treated as an administrative claim under Section 507(a)(1) of the Bankruptcy Code.

149362.00601/122722536v.4

## RETENTION AGREEMENT

9.  If an order containing these terms is not obtained from the Bankruptcy Court within 30 days after the parties to this Agreement have signed this Agreement, then either Broker may terminate this Agreement in which case it will be null and void as to all parties to this Agreement.  If Debtor obtains an order of the Bankruptcy Court authorizing its use of cash collateral or debtor in possession financing and if the order requires submission of a proposed budget specifying post-petition expenditures, then Debtor will include in the budget line items providing for the payment of commissions or fees to be paid or reimbursed under this Agreement.  All amounts projected to be paid to the Brokers under this Agreement will be included in the carve-out for professionals provided in Debtor's bankruptcy case.

10. This Agreement may not be modified, assigned and or rescinded, and once approved by the Bankruptcy Court, will be binding on and inure to the benefit of all parties including any of Debtor's affiliates, representatives, designees, successors and assigns, unless it is changed in a writing signed by all parties to this Agreement.

11. Debtor will deliver to the Brokers all financial and other information reasonably requested by the Brokers for the purpose of its performance hereunder to the extent in Debtor's possession, including without limitation title reports, engineering and environmental reports, building plans, plot plans and surveys, income and expense statements, lease summaries, and rent roll.  All information provided by Debtor to the Brokers will be, to the knowledge of Debtor, accurate and complete in all material respects, and if Debtor becomes aware that any information it has provided the Brokers is or has become materially inaccurate or incomplete, Debtor will promptly so notify the Brokers in writing.  Debtor agrees to disclose to the Brokers any existing liens or encumbrances against the Property and known to Debtor, and further agrees to disclose any new liens which arise during the Term and are known to Debtor.  Debtor will immediately inform the Brokers of any building code violations, environmental hazard or contamination relating to the Property, and of any existing or pending violation of federal, state or local environmental laws that become known to Debtor. The Brokers will be entitled to rely, without independent verification, on the accuracy and completeness of all information supplied to it by Debtor and the Brokers will not be responsible to Debtor, its creditors, or any third party for the inaccuracy or incompleteness of any information provided to it by Debtor.

12. Intentionally Omitted.

13. Debtor will share with the Brokers information the Brokers may request regarding the source of any sale that Debtor asserts did not involve the Brokers or any of its agents or representatives to the extent such information may affect the Brokers' entitlement to payment of the Commission hereunder. Any Commission to which the Brokers are entitled under this Agreement will be paid at Closing, by official bank / certified check or wire, unless the Bankruptcy Court requires Brokers to file a fee application, in which case Brokers will paid following entry of an order authorizing their payment.

14. . For the avoidance of doubt, the Brokers will be entitled to the Commission, regardless of whether the buyer or other party entering into the Transaction with Debtor was first introduced to the Property by the Brokers, subject to the terms and conditions of this Agreement, including, without limitation, Section 4(c) of this Agreement.

15. Each party to this Agreement will deal with the others fairly so as to allow each party to this Agreement to perform its duties and to receive the benefits of this Agreement, and will not interfere, prevent or prohibit

4

149362.00601/122722536v.4

**RETENTION AGREEMENT**

the other parties, in any manner, before or during the Closing, from carrying out its obligations under this Agreement.

16. Should the Bankruptcy Court order a sale of the Property at auction, the Brokers are authorized to and will act as the exclusive auctioneer and all terms will remain the same.

17. Debtor represents and warrants to Rosewood that:

   a. Upon approval by the Bankruptcy Court, Debtor will have the right, power and authority to retain the Brokers and will be authorized and directed to perform this Agreement.

   b. To the best of Debtor's knowledge, and unless otherwise previously disclosed, Debtor holds fee title to the Property subject to the exceptions that would be set forth in a current title report for the Property.

   c. If Debtor reaches agreement with a third party to sell the Property, Debtor will use its best efforts to obtain, and will not delay, any effort, application, petition or motion to obtain any necessary approval of the Bankruptcy Court or any other judicial, governmental, or regulatory authority approval.

18. Intentionally Omitted

19. The Commission, to the extent payable to the Brokers hereunder, will be free and clear of any liens, claims and encumbrances, including the liens of any secured creditor of Debtor.

20. Except as otherwise set forth herein, the Brokers will not be responsible for any other fees or commissions in connection with a disposition of the Property by the Debtor, including any fees or commissions that may be owed to any other broker.

21. Debtor's obligations under this Agreement will survive any change in control of the Debtor. If a trustee in bankruptcy is appointed for the Debtor, this Agreement will survive and remain in full force and effect.

22. The Bankruptcy Court will retain jurisdiction over any and all disputes under or otherwise relating to the construction and enforcement of the transactions contemplated hereunder. If the Debtor's bankruptcy case is dismissed, or the Automatic Stay is lifted or modified with respect to a Property and that Property is not disposed of under Bankruptcy Court jurisdiction, then any dispute between the parties arising under this Agreement will be resolved in the New York State Supreme Court, County of New York, Commercial Division.

23. The Brokers may at their option and own expense place announcements and advertisements or otherwise publicize their role in connection with this Agreement, including on their internet websites, in newspapers, periodicals, and in their marketing materials as they may choose, stating that they have acted as advisor(s) to Debtor with respect to a transaction involving the Property.

24. The Brokers will have no liability for delays, failure in performance, or damages due to fire, explosion, lightning, power surges or failures, strikes or labor disputes, water, war, civil disturbances, acts of civil or military authorities, telecommunications failures, fuel or energy shortages, acts or omissions of

149362.00601/122722536v.4

**RETENTION AGREEMENT**

communications carriers, or other causes beyond the Brokers' control whether or not similar to the foregoing.

25.    From time to time, a Broker or one of its affiliated entities may and shall have the right to advise or to provide services to several industry participants, some of which may be competitors of the Debtor. The Debtor, and its directors, officers, members and principals, waive any right to commence an action, suit or proceeding or to make any demand, complaint or claim against a Broker, its subsidiaries, affiliates, directors, officers, members, principals or other personnel, that arises out of the right of a Broker or one of its related entities to advise or provide services to an industry competitor of the Debtor. Notwithstanding the foregoing, because of the substantial number of brokers and salespersons employed by each Broker, a broker or brokerage team employed by a Broker may on occasion represent a prospect who may be interested in the Property, and which representation is intended to be independent of such Broker's representation hereunder. In such a case, such Broker will disclose its dual role in the potential transaction to the Debtor and to the prospect, and will implement reasonable industry safeguards to assure confidentiality to both the Debtor and the prospect. The Debtor acknowledges and agrees that:  (a) such occasional dual representation may occur, subject to appropriate disclosure as provided above; (b) such brokerage team representing the prospect will be deemed to be a permitted independent engagement for purposes hereof, but Debtor will have no responsibility for same; and (c) Debtor agrees that the Brokers will be entitled to the Commission payable hereunder notwithstanding a disclosed dual engagement.

26.    Each Broker's role will be as agent of the Debtor. The Debtor will remain fully responsible for all decisions and matters as to which a Broker's advice is sought. The Brokers are not assuming any management responsibilities for or on behalf of the Debtor. Debtor and the Brokers acknowledge and agree that Debtor's engagement of the Brokers does not confer and is not intended to confer any rights upon any person or entity not a party hereto, including any security holders or creditors of the Debtor. The Brokers' duties hereunder run solely to the Debtor. All advice provided by the Brokers to the Debtor pursuant to this Agreement is intended solely for the use and benefit of the Debtor. Debtor agrees that the Brokers' advice may not be disclosed publicly or made available to third parties without the Brokers' prior written consent. The Brokers may condition the granting of such prior written consent upon obtaining a non-reliance letter and a release from any such third parties.

27.    Any notice or communication sent with respect to this Agreement must be in writing and delivered via overnight mail (using a nationally recognized courier service):

If to Debtor:
WANSDOWN PROPERTIES CORPORATION N.V.
29 Beekman Place
New York, NY 10022

With a copy to:

BLANKROME
1271 Avenue of the Americas
New York, NY 10020
Attn: Lawrence F. Flick II, Esq.

6

149362.00601/122722536v.4

**RETENTION AGREEMENT**

flick@blankrome.com

If to Rosewood:
Rosewood Realty Group
38 East 29th Street, 5th Fl.
New York, New York 10016
Attn: Greg Corbin

If to Compass:
COMPASS
10 East 53rd Street, 4th Floor
New York, NY 10022
Attn: Charlie Attias

All such notices or communications will be deemed to have been given one business day following the date of delivery by overnight mail addressed as aforesaid.

28. Signatures to this Agreement may be exchanged by hand, by mail, by fax, by photocopy, or in counterparts; any such method being binding on both sides when completed and exchanged.

29. This Agreement is subject to approval of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). If this Agreement is not approved by the Bankruptcy Court, then this Agreement will be deemed terminated. This paragraph will survive termination of this Agreement. This Agreement has been made under and will be governed by the laws of the State of New York., without giving effect to conflicts of law rules.

30. Compass acknowledges and agrees that the Exclusive Townhouse Sales Agreement dated September 7, 2019 between Debtor and Compass, as the same may have been amended, modified or supplemented ("Original Compass Agreement"), is hereby terminated in its entirety and is hereby null and void, and neither Debtor nor Compass shall have any liability or obligation to each other in connection with the Original Compass Agreement, provided, however, that Paragraph 2 of that certain Rider to Exclusive Right to Sell Agreement dated September 12, 2019 between Debtor and Compass shall remain in full force and effect and is hereby incorporated by reference in this Agreement solely as between Debtor and Compass.

31. Each Broker shall submit to Debtor, on a bi-weekly basis, a written status report of such Broker's efforts since the date of the previous such report in connection with the Property and of any existing and viable offers to purchase the Property.

If the foregoing accurately sets forth our Agreement, please sign below and return this original Agreement to Rosewood. This Agreement contains the entire agreement between Debtor and the Brokers. Any prior discussions and agreements between the parties concerning this subject matter are superseded by this Agreement. This Agreement will be deemed to have been jointly drafted by the parties to this Agreement and there will be no presumption in interpretation against any party as the drafter of this Agreement. The terms of this Agreement may not be modified or changed except by a writing signed by the parties. Each of Debtor, Rosewood and Compass understands that this is a legal document, acknowledges that it has consulted with counsel of its

7

Agreement. This Agreement will be deemed to have been jointly drafted by the parties to this Agreement and there will be no presumption in interpretation against any party as the drafter of this Agreement. The terms of this Agreement may not be modified or changed except by a writing signed by the parties. Each of Debtor, Rosewood and Compass understands that this is a legal document, acknowledges that it has consulted with counsel of its choice regarding its terms before deciding whether to execute it, and agrees to the terms and conditions set forth herein.

**WANSDOWN PROPERTIES CORPORATION N.V.,**
a Delaware limited liability company

By: _~~~~~~~~~~~
Name: GHOLAM R. GOLSORKH'
Title: PRESIDENT & BOARD MEMBER

Date: 10ᵃ March , 2020

**ROSEWOOD REALTY GROUP**

By: _____
Name:
Title:

Date: _____, 2020

**URBAN COMPASS, INC. D/B/A COMPASS**

By: _____
Name:
Title:

Date: _____, 2020

8

**RETENTION AGREEMENT**

choice regarding its terms before deciding whether to execute it, and agrees to the terms and conditions set forth herein.

**WANSDOWN PROPERTIES CORPORATION N.V.,**
a Delaware limited liability company

By: _____
Name:
Title:

**Date:** _____ ____, **2020**

**ROSEWOOD REALTY GROUP**

By: _____
Name: GREG CORBIN
Title: PRESIDENT, BANKRUPTCY AND RESTRUCTURING

**Date:** _____ ____, **2020**

**URBAN COMPASS, INC. D/B/A COMPASS**

By: _____
Name: Sarah Orlinsky
Title: Sales Manager

**Date:** _____ March 12 ____, **2020**

8

**RETENTION AGREEMENT**

Exhibit A

List of Prospective Purchasers per Section 4(c)

1. Nino Shmariahu
2.  Gandy Thomas – Haiti Government
3. The Laos Mission to the UN
4. Ming Hsu
5. Elbaz Family and Affiliates
6. Todd Meister
7. David G. Miller private client
8. Ambassador Mohamed Bahr Aluloom of Iraq
9. Joshua, Joseph and Walter  Schik and affiliates
10. Anoop & Mrinalini Dave
11. Mr. Moshe Azoulay and affiliates
12. Government of Angola
13. Kabir Manchanda
14. UN British Ambassador
15. Cote D'ivoire Government
16. Government of Qatar
17. H.R.H Prince Fawaz Al-Jawali
18. TH Associates
19. Dolphin Capital
20. Latsis Familly
21. Samaras Familly
22. Millenium Partners
23. Lemos Familly
24. Vernicos Familly
25. Campagnioli Familly
26. Nostrati Familly
27. Chetrit Family and Affiliates
28.  Ron Bruder Family and Affiliates
29.  Allan Cheney

9

149362.00601/122722536v.4

# EXHIBIT C

# (CORBIN DECLARATION)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :    Chapter 11
                                              :
WANSDOWN PROPERTIES CORPORATION               :    Case No.:  19-13223 (SMB)
N.V.,                                         :
                                              :
                      Debtor.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF GREG CORBIN IN SUPPORT
## OF DEBTOR'S MOTION TO RETAIN BROKERS

GREG CORBIN hereby declares under penalty of perjury and pursuant to 28 U.S.C.

§ 1746 that the following is true and correct to the best of my knowledge, information and belief:

1.    I am a licensed real estate agent in the state of New York and am the President of

Bankruptcy and Restructuring at Rosewood Realty Group ("Rosewood").

2.    I am authorized to execute this Declaration on behalf of Rosewood.

3.    I respectfully submit this Declaration in support of the application (the

"Application") of Wansdown Properties Corporation N.V. (the "Debtor") for entry of an order

approving the retention of Rosewood and Urban Compass, Inc. d/b/a Compass ("Compass, and

together with Rosewood, the "Brokers") as exclusive real estate brokers for the Debtor pursuant

to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local

Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local

Rules").

4.    Unless otherwise stated in this Declaration, I have personal knowledge of the

facts set forth herein.  To the extent any information disclosed herein requires amendment or

modification upon Rosewood's completion of further review, or as additional information

regarding parties in interest in this Chapter 11 Case becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented, or otherwise modified information.

## ROSEWOOD'S QUALIFICATIONS

5.      Rosewood is well-suited to provide real estate services to the Debtor. Rosewood is a licensed real estate broker in and by the State of New York, with substantial experience in the marketing and sale of commercial and residential real property.  Rosewood has been ranked the number one single office investment sales firm in New York in transaction volume from 2007 to 2019. Rosewood has reached over $3.2 billion in sales per year and its principals have sold over 3,000 buildings. Rosewood has extensive experience in selling buildings via chapter 7 and 11.  Moreover, Rosewood has a team of 25 brokers, who all work to procure purchases for the properties Rosewood sells, rather than a single agent or team working to market a property.  Accordingly, Rosewood will be able to effectively market the Debtor's townhouse located at 29 Beekman Place, New York, New York 10022 (the "Property").  Rosewood desires and is willing to act, together with Compass, as the Debtor's exclusive real estate co-broker for the marketing and sale of the Property and to render the necessary professional service required in connection with same.

## SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE

6.      In connection with this Chapter 11 Case, the services Rosewood will provide to the Debtor are covered by the *Retention Agreement* dated as of March 5, 2020, (the "Listing Agreement") between and among the Debtor, Rosewood, and Compass.  Pursuant to the Listing Agreement, Rosewood will use its commercially reasonable efforts to obtain a satisfactory purchaser for the Property on such terms as are acceptable to the Debtor. Rosewood will negotiate the business terms of each purchase and sale agreement on behalf of

the Debtor, subject to the Debtor's review and approval.  Rosewood will cooperate with other licensed real estate brokers, if any, representing purchasers subject to the terms of the Listing Agreement.

## ROSEWOOD'S DISCLOSURE PROCEDURES

7.      In connection with preparing and submitting this declaration, Rosewood searched its records for any past and present transactions and/or contracts that involve, or *may* have involved the Debtor, and its principals, agents, and affiliated entities, the Debtor's creditors or any other party in interest in the instant Bankruptcy Court proceeding and determined that it has no such transactions and/or contracts to disclose.

## ROSEWOOD'S DISINTERESTEDNESS

8.      To the best of my knowledge, information and belief, Rosewood does not currently represent the Debtor or any of its agents, principals or affiliated entities, the Debtor's creditors or any other party in interest in the Chapter 11 Case, in connection with any active, ongoing or pending listing contract for sale/rent or buyer/tenant representation agreement.

9.      To the best of my knowledge, information and belief, neither Rosewood nor any of its employees or affiliated sales associates represent any interest adverse to the Debtor or its estate in any matters upon which Rosewood is to be engaged.

10.      Further, in the course of its real estate brokerage business, Rosewood appears in numerous cases, proceedings and/or transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtor's Chapter 11 Case.  In addition, Rosewood has in the past, may currently and likely will in the future be working with other professionals involved in this case in matters unrelated to the Debtor and this case.  To the best of my knowledge,

3

information and belief, none of these relationships create interests materially adverse to the

Debtor in the matters upon which Rosewood is to be employed.

11.    It was determined that Rosewood does not hold or represent an interest that is

adverse to the Debtor's estate, and that Rosewood is a "disinterested person" as such term is

defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

Bankruptcy Code, in that Rosewood, or its employees or affiliated sales associates:

> (i)    are not creditors, equity security holders or insiders of the Debtor;
>
> (ii)    are not and were not investment bankers for any outstanding security of the Debtor;
>
> (iii)    have not been, within three years before the Petition Date, investment bankers for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtor;
>
> (iv)    are not and were not, within two years before the Petition Date, a director, officer, or employee of the Debtor or any investment banker specified in subparagraph (ii) or (iii) of this paragraph; and
>
> (v)    do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker specified in subparagraph (ii) or (iii) of this paragraph, or for any other reason, other than as set forth herein.

12.    Rosewood maintains that it is disinterested and should be retained to serve as the

Debtor's real estate broker, together with Compass, in connection with the matters contemplated

in the Application.

13.    Rosewood will regularly review its records to ensure that no disqualifying

circumstances arise as to any new, significant creditors that come to light, and if any new

relevant facts or relationships are discovered, Rosewood will file a supplemental disclosure with

the Court and serve such supplemental disclosure on the Office of the United States Trustee for

the Southern District of New York.

4

14.    Based upon the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe that Rosewood does not hold or represent an interest adverse to the Debtor's estate in the matters upon which Rosewood is to be employed, and that Rosewood is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

## PROFESSIONAL COMPENSATION

15.    Rosewood is not a creditor of the Debtor or its estate.  The Debtor has not yet paid any amounts to Rosewood, either pre- or post- petition.

16.    It is contemplated that Rosewood will seek compensation in accordance with the Listing Agreement, subject to the approval of this Court and compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the United States Trustee's Guidelines for Fees and Disbursements, and any administrative orders issued by the Court.

17.    Subject to clause (c) below, the Brokers will be paid, as their full and complete compensation for all brokerage commissions and expenses for all services that have been rendered and that will be rendered in connection with the Transaction (as defined in the Listing Agreement), an aggregate commission equal to five percent (5%) of the gross purchase price of the Property (the "Commission") as follows: fifty percent (50%) of the Commission shall be paid to Compass and fifty percent (50%) of the Commission shall be paid to Rosewood, in each case, at the closing of the Transaction (the "Closing"), without further order of the Court, by the Prospective Purchaser (as defined in the Listing Agreement), upon the occurrence of any of the following events:

(a)    Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction,

5

or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the Debtor engages a different broker or advisor to close the Transaction; or

(b)    If a sale, exchange or other conveyance of the Property or ownership or control of the Property is made or takes place, within one hundred eighty (180) days after expiration or termination of the Term (the "Additional Period"), to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but (i) with whom a Broker has negotiated concerning the Property, or to whose attention the Property has been brought by a Broker, or who was introduced to Debtor by a Broker during the Term, and (ii) to whom such Broker has shown the Property, during the Term (each such Prospective Purchaser shall hereinafter be referred to as an "Active Prospect"). Within five (5) days after the expiration or termination of the Term, each Broker shall deliver to Debtor a true, correct and complete list of Active Prospects.

(c)    Notwithstanding anything to the contrary contained in the Listing Agreement, if a sale, exchange or other conveyance of the Property, or ownership or control of the Property, is made or takes place, whether during the Term or the Additional Period, to a Prospective Purchaser (i) listed on Exhibit A to the Listing Agreement and (ii) with whom Compass has visited the Property and to whom Compass has shown the Property, then the Commission shall not be paid to the Brokers in accordance with the allocation set forth above; rather, the Commission shall be paid as follows: sixty percent (75%) of the Commission shall be paid to Compass and forty percent (25%) of the Commission shall be paid to Rosewood, in each case, at the Closing, without further order of the Court, by the Prospective Purchaser.

18.    The source of any compensation to Rosewood shall be the Debtor, to be paid out of the proceeds of the sale of the Property in accordance with the Listing Agreement. Rosewood's compensation is results-oriented and directly related to benefits received by the Debtor's Estate. Rosewood will not be compensated based upon time and effort expended. Accordingly, Rosewood respectfully submits that the recording and submission of detailed time entries for services rendered in these sales is unnecessary; and, it would be unduly burdensome to Rosewood.

19.    Except for Rosewood's agreement with Compass, as expressly set forth in the Listing Agreement, no promises have been received by Rosewood, or any employee or affiliated sales associate thereof, as to payment or compensation in connection with this Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  Rosewood has no agreement with any other entity to share with such entity any compensation received by Rosewood or by such entity.

20.    The Application requests approval of Rosewood's retention on terms and conditions consistent with the Listing Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: New York, New York
        March [11], 2020

                                                    _____
                                                              Greg Corbin

# EXHIBIT D

# (ATTIAS DECLARATION)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :   Chapter 11
                                        :
WANSDOWN PROPERTIES CORPORATION         :   Case No.:  19-13223 (SMB)
N.V.,                                   :
                                        :
                Debtor.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF CHARLIE ATTIAS IN
## SUPPORT OF DEBTOR'S MOTION TO RETAIN BROKERS

CHARLIE ATTIAS hereby declares under penalty of perjury and pursuant to 28 U.S.C.

§ 1746 that the following is true and correct to the best of my knowledge, information and belief:

1.      I am a licensed real estate broker in the state of New York of Urban Compass, Inc.

d/b/a Compass ("Compass").

2.      I am authorized to execute this Declaration on behalf of Compass.

3.      I respectfully submit this Declaration in support of the application (the

"Application") of Wansdown Properties Corporation N.V. (the "Debtor") for entry of an order

approving the retention of Compass and Rosewood Realty Group ("Rosewood," and together

with Compass, the "Brokers") as exclusive real estate brokers for the Debtor pursuant to sections

327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of

the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

4.      Unless otherwise stated in this Declaration, I have personal knowledge of the

facts set forth herein.  To the extent any information disclosed herein requires amendment or

modification upon Compass's completion of further review, or as additional information

regarding parties in interest in this Chapter 11 Case becomes available, a supplemental

declaration will be submitted to the Court reflecting such amended, supplemented, or otherwise modified information.

## COMPASS'S QUALIFICATIONS

5.      Compass is well-suited to provide real estate services to the Debtor.  Compass is a licensed real estate broker in and by the State of New York, with substantial experience in the marketing and sale of commercial and residential real property.

6.      Prior to the commencement of the Debtor's bankruptcy case, Compass was retained as the Debtor's exclusive broker to sell the Debtor's townhouse located at 29 Beekman Place, New York, New York 10022 (the "Property") under an Exclusive Townhouse Sales Agreement dated September 7, 2019 (the "Compass Agreement").   In connection with Compass's pre-petition efforts to market and sell the Property, Compass solicited offers for the Property and showed the Property to potential buyers.   I have extensive experience marketing properties located in Manhattan to high-end buyers.

7.      Accordingly, Compass will be able to effectively market the Property in the Debtor's Chapter 11 Case.  Compass desires and is willing to act, together with Rosewood, as the Debtor's exclusive real estate co-broker for the marketing and sale of the Property and to render the necessary professional service required in connection with same.

## SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE

8.      In connection with this Chapter 11 Case, the services Compass will provide to the Debtor are covered by the *Retention Agreement* dated as of March 5, 2020, (the "Listing Agreement") between and among the Debtor, Rosewood, and Compass.  Pursuant to the Listing Agreement, Compass will use its commercially reasonable efforts to obtain a satisfactory purchaser for the Property on such terms as are acceptable to the Debtor.  Compass will negotiate

the business terms of each purchase and sale agreement on behalf of the Debtor, subject to the Debtor's review and approval. Compass will cooperate with other licensed real estate brokers, if any, representing purchasers subject to the terms of the Listing Agreement.

## COMPASS'S DISCLOSURE PROCEDURES

9.      In connection with preparing and submitting this declaration, Compass searched its records for any past and present transactions and/or contracts that involve, or *may* have involved the Debtor, and its principals, agents, and affiliated entities, the Debtor's creditors or any other party in interest in the instant Bankruptcy Court proceeding and determined that, other than as set forth below, Compass has no such transactions and/or contracts to disclose.

10.      As discussed above, the Debtor and Compass are parties to the pre-petition Compass Agreement. Compass has not been paid by the Debtor for any amounts under the Compass Agreement. Compass has agreed that the Listing Agreement will supersede and replace the Compass Agreement. Compass will not seek any compensation or assert any claim against the Debtor based on the Compass Agreement, and will only seek to be paid under the terms of the Listing Agreement, subject to this Court's approval of the Application.

## COMPASS'S DISINTERESTEDNESS

11.      To the best of my knowledge, information and belief, Compass does not currently represent the Debtor's creditors or any other party in interest in the Chapter 11 Case, in connection with any active, ongoing or pending listing contract for sale/rent or buyer/tenant representation agreement.

12.      To the best of my knowledge, information and belief, neither Compass nor any of its employees or affiliated sales associates represent any interest adverse to the Debtor or its estate in any matters upon which Compass is to be engaged.

13.    Further, in the course of its real estate brokerage business, Compass appears in numerous cases, proceedings and/or transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtor's Chapter 11 Case.  In addition, Compass has in the past, may currently and likely will in the future be working with other professionals involved in this case in matters unrelated to the Debtor and this case.  To the best of my knowledge, information and belief, none of these relationships create interests materially adverse to the Debtor in the matters upon which Compass is to be employed.

14.    It was determined that Compass does not hold or represent an interest that is adverse to the Debtor's estate, and that Compass is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Compass, or its employees or affiliated sales associates:

(i)     are not creditors, equity security holders or insiders of the Debtor;

(ii)    are not and were not investment bankers for any outstanding security of the Debtor;

(iii)   have not been, within three years before the Petition Date, investment bankers for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtor;

(iv)    are not and were not, within two years before the Petition Date, a director, officer, or employee of the Debtor or any investment banker specified in subparagraph (ii) or (iii) of this paragraph; and

(v)     do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker specified in subparagraph (ii) or (iii) of this paragraph, or for any other reason, other than as set forth herein.

15.    Compass maintains that it is disinterested and should be retained to serve as the Debtor's real estate broker, together with Rosewood, in connection with the matters contemplated in the Application.

16.    Compass will regularly review its records to ensure that no disqualifying circumstances arise as to any new, significant creditors that come to light, and if any new relevant facts or relationships are discovered, Compass will file a supplemental disclosure with the Court and serve such supplemental disclosure on the Office of the United States Trustee for the Southern District of New York.

17.    Based upon the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe that Compass does not hold or represent an interest adverse to the Debtor's estate in the matters upon which Compass is to be employed, and that Compass is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

## PROFESSIONAL COMPENSATION

18.    Compass is not a creditor of the Debtor or its estate. The Debtor has not yet paid any amounts to Compass, either pre- or post- petition.

19.    It is contemplated that Compass will seek compensation in accordance with the Listing Agreement, subject to the approval of this Court and compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the United States Trustee's Guidelines for Fees and Disbursements, and any administrative orders issued by the Court.

20.    Subject to clause (c) below, the Brokers will be paid, as their full and complete compensation for all brokerage commissions and expenses for all services that have been

rendered and that will be rendered in connection with the Transaction (as defined in the Listing Agreement), an aggregate commission equal to five percent (5%) of the gross purchase price of the Property (the "Commission") as follows: fifty percent (50%) of the Commission shall be paid to Compass and fifty percent (50%) of the Commission shall be paid to Rosewood, in each case, at the closing of the Transaction (the "Closing"), without further order of the Court, by the Prospective Purchaser (as defined in the Listing Agreement), upon the occurrence of any of the following events:

(a)     Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the Debtor engages a different broker or advisor to close the Transaction; or

(b)     If a sale, exchange or other conveyance of the Property or ownership or control of the Property is made or takes place, within one hundred eighty (180) days after expiration or termination of the Term (the "Additional Period"), to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but (i) with whom a Broker has negotiated concerning the Property, or to whose attention the Property has been brought by a Broker, or who was introduced to Debtor by a Broker during the Term, and (ii) to whom such Broker has shown the Property, during the Term (each such Prospective Purchaser shall hereinafter be referred to as an "Active Prospect"). Within five (5) days after the expiration or termination of the Term, each Broker shall deliver to Debtor a true, correct and complete list of Active Prospects.

(c)     Notwithstanding anything to the contrary contained in the Listing Agreement, if a sale, exchange or other conveyance of the Property, or ownership or control of the Property, is made or takes place, whether during the Term or the Additional Period, to a Prospective Purchaser (i) listed on Exhibit A to the Listing Agreement and (ii) with whom Compass has visited the Property and to whom Compass has shown the Property, then the Commission shall not be paid to the Brokers in accordance with the allocation set forth above; rather, the Commission shall be paid as follows: sixty percent (75%) of the Commission shall be paid to Compass and forty percent (25%) of the Commission shall be paid

to Rosewood, in each case, at the Closing, without further order of the Court, by the Prospective Purchaser.

21.     The source of any compensation to Compass shall be the Debtor, to be paid out of the proceeds of the sale of the Property in accordance with the Listing Agreement. Compass's compensation is results-oriented and directly related to benefits received by the Debtor's Estate. Compass will not be compensated based upon time and effort expended. Accordingly, Compass respectfully submits that the recording and submission of detailed time entries for services rendered in these sales is unnecessary; and, it would be unduly burdensome to Compass.

22.     Except for Compass's agreement with Rosewood, as expressly set forth in the Listing Agreement, no promises have been received by Compass, or any employee or affiliated sales associate thereof, as to payment or compensation in connection with this Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Compass has no agreement with any other entity to share with such entity any compensation received by Compass or by such entity.

23.     The Application requests approval of Compass's retention on terms and conditions consistent with the Listing Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: New York, New York
       March [  ], 2020


Charlie Attias