RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WANSDOWN PROPERTIES CORPORATION N.V., | : | Case No.: 19-13223 (SMB) |
| | : | |
| Debtor. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE HEARING ON OBJECTION TO
### CLAIM NO. 9 FILED BY PELMADULLA STIFTUNG, VADUZ

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the objection (the "Claim Objection") seeking entry of an order disallowing and expunging the claim of Pelmadulla Stiftung, Vaduz ("Pelmadulla"), designated as claim number 9 on the Debtor's claims register, has been scheduled to be heard before the Honorable Stuart M. Bernstein, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, on **May 28, 2020, at 10:00 a.m.**

**PLEASE TAKE FURTHER NOTICE** that objections to the Claim Objection, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court, with a courtesy copy to the Bankruptcy Court, and shall be served upon (a) counsel for the Debtor, Rubin LLC, 345 Seventh Avenue,

21st Floor, New York, NY 10001 (Attn.: Paul A. Rubin); (b) the Office of the United States Trustee, 201 Varick Street, New York, NY 10014 (Attn.: Paul Schwartzberg); and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **May 21, 2020**.

Dated: New York, New York
April 22, 2020

                                                RUBIN LLC

                                                By:   */s/ Paul A. Rubin*
                                                         Paul A. Rubin
                                                         Hanh V. Huynh

                                              345 Seventh Avenue, 21st Floor
                                              New York, New York 10001
                                              Tel: 212.390.8054
                                              Fax: 212.390.8064
                                              prubin@rubinlawllc.com
                                              hhuynh@rubinlawllc.com

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------ x
                                     :
In re:                               :   Chapter 11
                                     :
WANSDOWN PROPERTIES CORPORATION      :   Case No.: 19-13223 (SMB)
N.V.,                                :
                                     :
                Debtor.              :
------------------------------------ x

## OBJECTION TO CLAIM NO. 9 FILED BY PELMADULLA STIFTUNG, VADUZ

Wansdown Properties Corporation N.V. (the "Debtor"), the debtor and debtor in possession herein, by its counsel, Rubin LLC, hereby files this objection (the "Claim Objection") seeking entry of an order disallowing and expunging the claim of Pelmadulla Stiftung, Vaduz ("Pelmadulla"), designated as claim number 9 on the Debtor's claims register, which asserts a general unsecured claim against the Debtor in the amount of $3,243,941.19 (the "Pelmadulla Claim"). In support of this Claim Objection, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

**The Debtor and Pelmadulla**

3. The Debtor was incorporated in 1979 under the laws of Curacao, in accordance with Article 38 of the Commercial Code of the Netherlands Antilles and continues to exist under the laws of the Netherland Antilles.

4. Pelmadulla was and is the sole shareholder of the Debtor.

5. In 1980, the Debtor acquired the townhouse located at 29 Beekman Place, New York, New York (the "Townhouse"). The Debtor never generated any income or revenue from its ownership of the Townhouse or otherwise. From the outset, the Debtor's expenses were paid by Pelmadulla as requested by the Debtor from time to time.

**The Chapter 11 Case**

6. On October 8, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, and an order for relief under section 301 of the Bankruptcy Code was entered in this case (the "Chapter 11 Case").

7. The Debtor has been authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the Chapter 11 Case.

9. On November 6, 2019, the Court entered an order establishing December 31, 2019, as the bar date for filing proofs of claim against the Debtor.

**The Pelmadulla Claim**

10. On December 31, 2019, Pelmadulla filed the Pelmadulla Claim.

11. The Pelmadulla Claim asserts a general unsecured claim in the amount of $3,243,941.19 based on a purported loan or loans. The Pelmadulla Claim does not include any documents evidencing any loan or loans between the Debtor and Pelmadulla. The only exhibit to the Pelmadulla Claim is a one-page running account balance that lists a series of transfers to and from the Debtor over a period of nine years, conspicuously marked "DRAFT."

12. Notably, the addendum to the Pelmadulla Claim fails to describe any terms for the purported loan or loans. For example, there is no reference to any interest rate, fees, maturity date, events of default, or default interest.

13. In the exhibit to the Pelmadulla Claim, Pelmadulla lists an entry described as "Derecognition loan acc. tax declaration" on December 31, 2012 in the amount of $10,816,579, which brought the balance down to $0. Thus, as Pelmadulla itself has acknowledged, any shareholder loans made by Pelmadulla were derecognized in 2012. Thereafter, on an intermittent and as-needed basis, Pelmadulla continued to provide funds to the Debtor to enable the Debtor to pay overdue expenses,[1] but the amounts funded were not loans, and not treated as loans by the Debtor and Pelmadulla. There is no document evidencing any loan from Pelmadulla to the Debtor from 2013 to the present.

14. Tellingly, Pelmadulla states *upon information and belief* in the addendum to its claim that Pelmadulla agreed to loan funds to the Debtor in order for the Debtor to meet its operating expenses. *See* Addendum ¶ 6. The Pelmadulla Claim does not provide any indication of who allegedly agreed to those terms or when any such agreement was purportedly reached.

---

[1] From time to time, the Debtor's president, Gholam Reza Golsorkhi, also paid certain of the Debtor's expenses from his own funds.

**CLAIM OBJECTION**

15. A filed claim is deemed allowed unless a party in interest objects thereto. *See* 11 U.S.C. § 502(a); FED. R. BANKR. P. 3001(f). A proof of claim, however, is not afforded *prima facie* validity if it fails to attach all necessary supporting documentation in accordance with Bankruptcy Rule 3001(c), and the claimant bears the initial burden to prove the validity of its claim. *See* FED. R. BANKR. P. 3001(c); *In re Benyamin*, 587 B.R. 243, 252 (Bankr. S.D.N.Y. 2018).

16. Moreover, if an objection refuting at least one of the claim's essential allegations is asserted, the claimant then has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

17. Here, Pelmadulla asserts a claim for over $3.2 million based on what Pelmadulla defines in the addendum to the Pelmadulla Claim as a "Loan Agreement." But Pelmadulla has failed to attach any supporting documents to evidence a loan agreement. The one-page draft account balance provided by Pelmadulla does not satisfy the requirement under Rule 3001(c) to attach documentation supporting Pelmadulla's claim based on a purported "Loan Agreement." Accordingly, the burden of proof is on Pelmadulla to substantiate its claim.[2] Pelmadulla cannot satisfy this burden, because the Pelmadulla Claim is based on capital contributions made by Pelmadulla, and not a loan to the Debtor.

18. Whether an obligation is debt or equity "is typically a commonsense conclusion that the party infusing funds does so as a banker (the party expects to be repaid with interest no

---

[2] Furthermore, the Pelmadulla Claim is subject to strict scrutiny because it is asserted by an insider. *See, e.g., In re All-American Auxiliary Ass'n*, 95 B.R. 540 (Bankr. S.D. Ohio 1989) (in context of an objection to a proof of claim, "[w]here the claimant is an insider, or where the creditor exercises control or domination of the debtor, his dealings with the debtor are subject to strict scrutiny").

matter the borrower's fortunes; therefore the funds are debt) or as an investor (the funds infused are repaid based on the borrower's fortunes; hence, they are equity." *In re SubMicron Sys. Corp.*, 432 F.3d 448, 456 (3d Cir. 2006).

19. When determining whether an advance is debt or equity, courts have developed multi-factor tests to provide a framework within which to conduct the "debt vs. equity" inquiry.[3] The majority of courts, including this Court, refer to the eleven-factor analysis set forth in *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 747-48 (6th Cir. 2001). *See In re TransCare Corp.*, 602 B.R. 234, 243 (Bankr. S.D.N.Y. 2019); *In re Lyondell Chem. Co.*, 544 B.R. 75, 93 (Bankr. S.D.N.Y. 2016); *see also In re SubMicron Sys. Corp.*, 432 F.3d at 454-55.

20. "Under this test, the Court considers: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments." *In re TransCare Corp.*, 602 B.R. at 243-44.

---

[3] This analysis often occurs in the context of a proceeding to "recharacterize" debt as equity. The term "recharacterization," however, may be somewhat misleading, because "if a particular advance is a capital contribution, it never becomes a claim. The debt versus equity inquiry is not an exercise in *recharacterizing* a claim, but of *characterizing* the advance's true character." *In re Georgetown Bldg Assocs.*, *Ltd. P'ship*, 240 B.R. 124, 137 (Bankr. D.D.C. 1999).

5

21. Although the Court should resist a mechanistic application of the factors, the factors still serve as guideposts to assist the Court. *In re SubMicron Sys. Corp.*, 432 F.3d at 455. "No one factor is controlling or decisive [and] [t]he factors must be considered within the particular circumstances of each case." *AutoStyle*, 269 F.3d at 750. Application of the following relevant *AutoStyle* factors in this case decidedly favors characterization of the Pelmadulla Claim as an equity contribution.

22. <u>First</u>, there are no instruments of indebtedness prepared or executed by the Debtor or Pelmadulla with respect to the Pelmadulla Claim. This is a strong indication that the advances referenced in the Pelmadulla Claim were capital contributions and not loans. *See, e.g., AutoStyle*, 269 F.3d at 750 ("The absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans."); *In re Lyondell Chem. Co.*, 544 B.R. at 94 ("When an advance occurs without any instruments of indebtedness, such an action points to an equity contribution.").

23. <u>Second</u>, as noted above, there are no promissory notes or other written loan documents memorializing the advances made by Pelmadulla, much less a fixed maturity date or schedule of payments. The draft account sheet attached to the Pelmadulla Claim does not indicate any maturity date or scheduled payment dates.

24. <u>Third</u>, there are no fixed rate of interest or interest payments on account of the advances made by Pelmadulla, which is a further indication that the advances were capital contributions and not loans.

25. <u>Fourth</u>, the Debtor has no operating income, so the advances could only be repaid if there were funds available from the net proceeds of the sale of the Debtor's assets; to wit, the Townhouse. "'If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution.'" *In re Lyondell Chem.*

*Co.*, 544 B.R. at 96 (quoting *AutoStyle*, 269 F.3d at 751). *See also In re Schubh Hotels Pittsburgh, LLC*, 476 B.R. 181, 186 (Bankr. W.D. Pa. 2012) ("This expectation of repayment from the Debtor only whenever it had the cash flow available is the very essence of an investment transaction or equity infusion.") (alterations and quotations omitted); *In re Dornier Aviation (N. Am.) Inc.*, 2005 WL 4781236, at *19 (Bankr. E.D. Va. Feb. 8, 2005) ("Indeed, the hope of payment out of future profits is exactly what characterizes an equity investor.").

26. <u>Fifth</u>, Pelmadulla is the Debtor's sole shareholder, which suggests the advances made by Pelmadulla were capital contributions and not loans.

27. <u>Sixth</u>, the advances were not secured. "When loans are made on an unsecured basis, they are much easier to recharacterize than secured loans, and deserve higher scrutiny." *In re Lyondell Chem. Co.*, 544 B.R. at 98.

28. <u>Seventh</u>, the Debtor did not maintain a sinking fund from which the advances would be paid, which is further evidence that the advances were capital contributions and not loans.

29. In short, all of the relevant *AutoStyle* factors weigh heavily in favor of characterizing the advances made by Pelmadulla as capital contributions rather than loans.

30. Furthermore, disallowance of the Pelmadulla Claim is consistent with the bankruptcy court's ruling in *In re Schubh Hotels Pittsburgh, LLC*, 476 B.R. 181, 186 (Bankr. W.D. Pa. 2012), which involved facts strikingly similar to the case here.

31. In *Schubh Hotels*, a corporate entity controlled by an insider of the debtor filed a proof of claim asserting a claim in the amount of $15,227,670.09 for advances made to the debtor, described as "Loans to corporation" in the proof of claim. *In re Schubh Hotels Pittsburgh, LLC*, 476 B.R. at 183. Certain plan proponents and the trustee of a litigation trust filed objections to the proof of claim on the basis that the advances were not "loans" but rather

7

equity contributions. *Id.* at 183-84. In concluding that the advances were capital contributions and disallowing and expunging the entire claim, the bankruptcy court found the following facts demonstrated that the "loans" were actually capital contributions:

- The claimant did not produce any documents evidencing the advances as loans.

- The only document provided by the claimant was a transaction list to show funds transferred to and from the debtor to the claimant. There were no loan agreements, promissory notes, term sheets, payment schedules, bank records, canceled checks, or any other documents attached to the proof of claim.

- The advances were provided interest free.

- There was no maturity date for any of the advances.

- The advances were not secured by any interest in the debtor's property.

- The advances were recorded on the debtor's books as equity.

- The debtor's balance sheet did not show any money owed to the claimant.

- The debtor's bankruptcy schedules, signed under penalty of perjury, did not show any money owed to the claimant.

- The claimant's principal testified that the possibility of repayment of the advances was directly tied to the financial stability of the debtor's hotel property or the sale of the hotel to a third party.

32. As in *Schubh Hotels*, the facts here overwhelmingly suggest that the advances referenced in the Pelmadulla Claim were capital contributions. Accordingly, the Pelmadulla Claim must be disallowed and expunged in its entirety, as it is not a claim against the Debtor.

WHEREFORE, the Debtor respectfully requests the Court enter an order disallowing and expunging the Pelmadulla Claim, and grant the Debtor such other and further relief as is just and proper.

Dated: New York, New York
April 22, 2020

                                   RUBIN LLC

                                   By:   */s/ Paul A. Rubin*
                                              Paul A. Rubin
                                              Hanh V. Huynh

                                   345 Seventh Avenue, 21st Floor
                                   New York, New York 10001
                                   Tel: 212.390.8054
                                   Fax: 212.390.8064
                                   prubin@rubinlawllc.com
                                   hhuynh@rubinlawllc.com