RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | Chapter 11 |
| WANSDOWN PROPERTIES CORPORATION N.V., | Case No.: 19-13223 (SMB) |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON MOTION FOR APPROVAL OF SETTLEMENT**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion (the "Motion") for entry of an order approving the *Settlement and Mutual Release Agreement* dated August 19, 2020, between the Debtor and Pelmadulla Stiftung, Vaduz, has been scheduled to be heard before the Honorable Stuart M. Bernstein, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, on **September 29, 2020, at 10:00 a.m.**

**PLEASE TAKE FURTHER NOTICE** that objections the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court, with a courtesy copy to the Bankruptcy Court, and shall be served upon (a) counsel for the Debtor, Rubin LLC, 345 Seventh Avenue, 21st Floor, New

York, NY 10001 (Attn.: Paul A. Rubin); (b) the Office of the United States Trustee, 201 Varick Street, New York, NY 10014 (Attn.: Paul Schwartzberg); and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **September 22, 2020**.

Dated: New York, New York
August 21, 2020

    RUBIN LLC

    By: */s/ Paul A. Rubin*
        Paul A. Rubin
        Hanh V. Huynh

    345 Seventh Avenue, 21st Floor
    New York, New York 10001
    Tel: 212.390.8054
    Fax: 212.390.8064
    prubin@rubinlawllc.com
    hhuynh@rubinlawllc.com

Rubin LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| WANSDOWN PROPERTIES CORPORATION N.V., | : | Case No.: 19-13223 (SMB) |
| Debtor. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION FOR APPROVAL OF SETTLEMENT

Wansdown Properties Corporation N.V. (the "Debtor"), the debtor and debtor in possession herein, by its counsel, Rubin LLC, hereby files this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order substantially in the form annexed hereto as Exhibit A, approving the *Settlement and Mutual Release Agreement* dated August 19, 2020 (the "Settlement Agreement"), annexed hereto as Exhibit B, between the Debtor and Pelmadulla Stiftung, Vaduz ("Pelmadulla," and collectively with the Debtor, the "Parties"). In support of this Motion, the Debtor respectfully represents as follows:

## BACKGROUND

1. On October 8, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, and an order for relief under section 301 of the Bankruptcy Code was entered in this case (the "Chapter 11 Case").

2. The Debtor has been authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the Chapter 11 Case.

4. On November 6, 2019, the Court entered an order establishing December 31, 2019 as the deadline for filing proofs of claim against the Debtor.

5. On December 31, 2019, Pelmadulla, the Debtor's sole shareholder, filed a proof of claim, designated as claim number 9 on the Debtor's claims register, which asserts a general unsecured claim against the Debtor in the amount of $3,243,941.19 (the "Pelmadulla Claim"). The Pelmadulla Claim is based on purported loans that were made to the Debtor over the years.

6. On April 22, 2020, the Debtor filed its objection (the "Claim Objection") [ECF No. 89] seeking entry of an order disallowing and expunging the Pelmadulla Claim. In the Claim Objection, the Debtor argued that application of the factors typically considered by courts in determining whether funds provided to a debtor were in the nature of debt or equity militated in favor of the Court finding that the Pelmadulla Claim was for capital contributions. Among other things, the Debtor noted that there were no instruments of indebtedness with respect to the Pelmadulla Claim, and no documents memorializing any terms, maturity dates, interest rates, or schedules of payments.

7. On May 14, 2020, Azadeh Nasser Azari ("Azari") filed a joinder to the Claim Objection [ECF No. 93].

8. On May 21, 2020, Pelmadulla filed its *Response in Opposition to Debtor's Objection to Claim Filed By Pelmadulla Stiftung, Vaduz and in Further Support of Such Claim* [ECF No. 94], together with an affidavit of Dr. Guido Meier in support of the Response [ECF No. 95]. On May 26, 2020, the Debtor filed its reply [ECF No. 98] to the Response, together with a declaration of Gholam Reza Golsorkhi [ECF No. 98]

9. On May 28, 2020, the Court held a hearing to consider the Claim Objection and directed the Debtor to submit a stipulation and agreed order regarding discovery in connection with the Claim Objection. At that hearing, the Court stated that it believed the objection presented a question of fact, noting that prior advances from Pelmadulla to the Debtor had originally been listed as shareholder loans on the Debtor's tax returns. *See* Transcript of May 28, 2020 Hearing at 8:2-11.

10. On June 16, 2020, the Court entered the *Stipulation and Agreed Order Establishing Discovery Schedule for Objection to Claim No. 9 Flied By Pelmadulla Stiftung, Vaduz* (the "Discovery Scheduling Order"). The Discovery Scheduling Order set a July 31, 2020 cutoff date for the completion of all discovery in the contested matter arising from the Claim Objection, and scheduled a status conference for August 11, 2020.

11. Following the Parties' execution of the Discovery Scheduling Order, the Debtor and Azari propounded requests for the production of documents and served notices of depositions of Pelmadulla by Dr. Meier. The Debtor also received documents requests from Pelmadulla, and an informal request from Pelmadulla to depose the Debtor.

12. On July 16, 2020, the Court entered an order confirming the *Debtor's Second Amended Chapter 11 Plan*, dated June 9, 2020 (the "Plan") [ECF No. 113]. Pursuant to the Plan, Class 5 General Unsecured Creditors will receive their *pro rata* share of the cash remaining from the Plan Fund (as defined in the Plan) following payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims, and Allowed Class 4 Claims (all as defined in the Plan).

13. In order to avoid the cost and expense of litigating the Claim Objection, the Debtor and Pelmadulla negotiated and agreed to resolve the issues set forth in the Claim Objection pursuant to the terms of the Settlement Agreement.

## RELIEF REQUESTED

14. By this Motion, the Debtor respectfully requests entry of the proposed order annexed as Exhibit A approving the Settlement Agreement.

15. The Settlement Agreement provides that the Pelmadulla Claim will be reduced and allowed in the amount of $250,000 (the "Allowed Pelmadulla Claim"), and the Allowed Pelmadulla Claim will be treated as a Class 5 General Unsecured Claim in accordance with the terms of the Plan. The Parties will also exchange mutual releases under the Settlement Agreement.

## BASIS FOR RELIEF

16. The Settlement Agreement is in the best interests of the Debtor and its estate and should be approved. Bankruptcy Rule 9019(a) provides that on motion and after notice and a hearing, "the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In granting a motion pursuant to Bankruptcy Rule 9019(a), a Court must find that the proposed settlement is fair and equitable and is in the best interests of the debtor's estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re 47-49 Charles St., Inc.*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*,

156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). The decision to approve a particular compromise or settlement lies within the sound discretion of the bankruptcy court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). A settlement must not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

17. Although a court must "evaluate … all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being settled, *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993), or conduct a full independent investigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact … The court need only canvas the settlement to determine whether it is within the accepted range of reasonableness." *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (internal citations omitted).

18. Relying on the guiding language of *TMT Trailer Ferry*, courts in this Circuit have set forth the following factors to be considered in evaluating the reasonableness of settlement:

    (a)    the probability of success in litigation, with due consideration for the uncertainty in fact and law;

    (b)    the difficulties of collecting any litigated judgment;

    (c)    the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

    (d)    the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

    (e)    the competence and experience of counsel who support the settlement;

    (f)    the relative benefits to be received by members of any affected class;

    (g)    the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and

(h) the debtor's informed judgment that the settlement is fair and reasonable.

19. Based on the foregoing factors, the Debtor submits that the Settlement Agreement is fair, falls within the range of reasonableness, is consistent with the objectives of chapter 11, and should be approved.

20. Pelmadulla has agreed to a significant reduction to its asserted claim of over $3.2 million. The Allowed Pelmadulla Claim constitutes a 92% reduction of the asserted Pelmadulla Claim. Balanced against the uncertainty, risks, and delay inherent in litigation (no matter how confident a litigant may be in its position), this claim reduction represents a substantial benefit to the estate. As noted above, Pelmadulla has raised the issue that the Debtor for a time, before this case was filed, treated cash infusions from Pelmadulla as shareholder loans. The settlement will allow the Debtor to avoid the litigation risks presented by this issue.

21. Moreover, a settlement at this stage—before discovery is fully underway with depositions and further motion practice, and before expending resources preparing for and conducting a trial on the Claim Objection and submitting post-trial briefing—would save the estate from needlessly incurring legal fees that would be entitled to administrative expense priority. The monetary savings to the estate in avoiding legal fees alone is a sufficient basis to grant the relief requested. A simple cost-benefit analysis demonstrates that more funds will be available for distribution to the general unsecured creditor pool (even with the allowance of the Pelmadulla Claim in a reduced amount) with the Settlement Agreement than without it.

22. The Settlement Agreement here is also the product of arm's-length negotiation, and not the product of fraud or collusion. Pelmadulla is represented by highly experienced bankruptcy counsel and the settlement reflects what the Debtor submits is a fair compromise that is beneficial to the Debtor and its estate.

23. For the reasons set forth above, the Debtor submits that the settlement reached under the Settlement Agreement clearly falls above the lowest point in the range of reasonableness, and should be approved.

WHEREFORE, the Debtor respectfully requests that this Court enter an order approving the Settlement Agreement and grant the Debtor such other relief as may be just and proper.

Dated: New York, New York
      August 21, 2020

RUBIN LLC

By:   */s/ Paul A. Rubin*
     Paul A. Rubin
     Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

# EXHIBIT A
# (PROPOSED ORDER)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
: 
In re: : Chapter 11
:
WANSDOWN PROPERTIES CORPORATION : Case No.: 19-13223 (SMB)
N.V., :
:
                    Debtor. :
------------------------------------- x

## ORDER APPROVING SETTLEMENT AGREEMENT

Upon the motion (the "Motion") of Wansdown Properties Corporation N.V. (the "Debtor"), for entry of an order, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order approving the *Settlement and Mutual Release Agreement* dated August 19, 2020 (the "Settlement Agreement"),[1] between the Debtor and Pelmadulla Stiftung, Vaduz ("Pelmadulla," and collectively with the Debtor, the "Parties"), all as more fully described in the Motion; and due and proper notice of the Motion having been provided, and it appearing no other or further notice need be provided; and the Court having determined that the relief requested in the Motion is in the best interest of the Debtor, its estates and creditors; and the Court having determined that the Debtor has established good cause for the relief granted herein; and the Court having found that the Settlement Agreement constitutes a reasonable exercise of the Debtor's business judgment and otherwise satisfies the criteria for approval of settlements under Bankruptcy Rule 9019; and upon all of the proceedings had before the Court; and after due deliberation and sufficient and good cause appearing therefor;

---

[1] Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Settlement Agreement.

11

**IT IS HEREBY ORDER THAT:**

1. The Motion is granted and the Settlement Agreement is approved pursuant to Bankruptcy Rule 9019.

2. Upon the Effective Date, the Pelmadulla Claim shall be allowed as a prepetition general unsecured claim in the reduced amount of $250,000 (the "<u>Allowed Pelmadulla Claim</u>"). Upon the Effective Date, the Pelmadulla Claim will be deemed amended by the Allowed Pelmadulla Claim, and Pelmadulla shall have no other claim against the Debtor other than the Allowed Pelmadulla Claim. The Allowed Pelmadulla Claim will be treated as a Class 5 General Unsecured Claim in accordance with the terms of the Plan.

3. The Parties are authorized to carry out all of their respective obligations pursuant to the Settlement Agreement.

4. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5. Nothing contained in this Order or the Settlement Agreement shall preclude Azari from arguing, in the adversary proceeding pending against Azari at Adv. Pro. No. 19-1450, that Pelmadulla is not a "triggering creditor" for purposes of section 544(b) of the Bankruptcy Code.

6. This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this order.

Dated: [ ], 2020
      New York, New York

                                                Honorable Stuart M. Bernstein
                                                United States Bankruptcy Judge

# EXHIBIT B
# (SETTLEMENT AGREEMENT)

# SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement, dated as of August 19, 2020 (this "Settlement Agreement"), is entered into by and between Wansdown Properties Corporation N.V. (the "Debtor") and Pelmadulla Stiftung, Vaduz ("Pelmadulla") (collectively the "Parties," and each a "Party").

## RECITALS

WHEREAS, on October 8, 2019, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on December 31, 2019, Pelmadulla filed a proof of claim, designated as claim number 9 on the Debtor's claims register, which asserts a general unsecured claim against the Debtor in the amount of $3,243,941.19 (the "Pelmadulla Claim");

WHEREAS, on April 22, 2020, the Debtor filed its objection (the "Claim Objection") [ECF No. 89] seeking entry of an order disallowing and expunging the Pelmadulla Claim;

WHEREAS, on May 21, 2020, Pelmadulla filed its *Response in Opposition to Debtor's Objection to Claim Filed By Pelmadulla Stiftung, Vaduz and in Further Support of Such Claim* (the "Response") [ECF No. 94], together with an affidavit of Dr. Guido Meier in support of the Response [ECF No. 95];

WHEREAS, on May 26, 2020, the Debtor filed its reply (the "Reply") [ECF No. 98] to the Response, together with a declaration of Gholam Reza Golsorkhi [ECF No. 98];

WHEREAS, on May 28, 2020, the Court held a hearing to consider the Claim Objection;

WHEREAS, on July 16, 2020, the Court entered an order confirming the *Debtor's Second Amended Chapter 11 Plan*, dated June 9, 2020 (the "Plan") [ECF No. 113];

WHEREAS, after good faith, arm's length negotiations, in the interest of resolving and

1

settling all of their respective disputes and claims in their entirety, and to avoid the risks and costs of continued litigation without admission of liability except as set forth in this Settlement Agreement, the Parties desire to resolve finally all controversies, disputes and claims between them in accordance with the terms of this Settlement Agreement.

NOW THEREFORE, in consideration of the premises set forth above and by execution of this Settlement Agreement, the Debtor and Pelmadulla hereby agree as follows:

1. <u>Recitals</u>. The Parties agree that the foregoing Recitals are incorporated herein by this reference.

2. <u>Effective Date</u>. This Settlement Agreement shall be effective on the first (1st) day following the date on which an order of the Bankruptcy Court approving this Settlement Agreement becomes a Final Order (the "<u>Effective Date</u>"). As used herein, "Final Order" shall mean an order of the Bankruptcy Court or any court of competent jurisdiction that is no longer subject to the imposition of any stay pending appeal or subject to reversal, modification or amendment by appeal, review or writ of certiorari; <u>provided</u>, <u>however</u>, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule may be, but has not been filed, shall not cause an order not to be a Final Order.

3. <u>Reduction and Allowance of Pelmadulla Claim</u>. Upon the Effective Date, the Pelmadulla Claim shall be an allowed pre-petition general unsecured claim against the Debtor in the reduced total amount of $250,000 (the "<u>Allowed Pelmadulla Claim</u>"). Upon the Effective Date, the Pelmadulla Claim will be deemed amended by the Allowed Pelmadulla Claim, and Pelmadulla shall have no other claim against the Debtor other than the Allowed Pelmadulla Claim.

The Allowed Pelmadulla Claim will be treated and paid as a Class 5 General Unsecured Claim in accordance with the terms of the Plan.

4.  Debtor's Release. Effective on the Effective Date, the Debtor, on behalf of itself and its bankruptcy estate, and its and their successors and assigns (collectively, the "Debtor Releasors") shall be deemed to have irrevocably and fully released and discharged Pelmadulla, its officers, directors, attorneys, employees, agents, successors and assigns in such capacities (collectively, the "Pelmadulla Released Parties") from any and all claims, causes of action, suits, debts, liabilities, damages, counterclaims, rights of setoff and recoupment, costs, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Debtor Releasors ever had, now have or may have against the Pelmadulla Released Parties by reason of any matter whatsoever, at law or in equity, whether known or unknown, from the beginning of time through the date of this Settlement Agreement.

5.  Pelmadulla's Release. Effective on the Effective Date, but specifically excluding the Allowed Pelmadulla Claim from the following release, Pelmadulla and its successors and assigns (collectively, the "Pelmadulla Releasors") shall be deemed to have irrevocably and fully released and discharged the Debtor, its bankruptcy estate, and its and their successors and assigns in such capacities (collectively, the "Debtor Released Parties") from any and all claims and causes of action, suits, debts, liabilities, damages, counterclaims, rights of setoff and recoupment, costs, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or

unsuspected, in law or equity, which the Pelmadulla Releasors ever had, now have or may have against the Debtor Released Parties by reason of any matter whatsoever, at law or in equity, whether known or unknown, from the beginning of time through the date of this Settlement Agreement.

6. <u>Court Approval</u>. This Settlement Agreement is subject to Court approval. The Debtor shall promptly file a motion with the Court seeking the entry of an order that is reasonably acceptable to Pelmadulla, seeking a Final Order authorizing and approving this Settlement Agreement pursuant to 11 U.S.C.§ 105 and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

7. <u>Non-admission of Liability</u>. The Parties agree that nothing contained in this Settlement Agreement will be deemed or construed at any time for any purpose as an admission by the Debtor or Pelmadulla, or evidence of any liability of any kind; provided however that the foregoing shall not affect the allowance of the Allowed Pelmadulla Claim as otherwise provided for in this Settlement Agreement.

8. <u>Governing Law</u>. This Settlement Agreement shall be construed in accordance with the laws of the State of New York, and the rights and liabilities with respect to this Settlement Agreement of the parties hereto including any assignees and successors shall be determined in accordance with the law of the State of New York. Any action or proceeding of any kind brought upon or with respect to this Settlement Agreement shall be brought in the Bankruptcy Court.

9. <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes and replaces any prior communications, negotiations, agreements and understandings, whether written or oral, between the Parties with respect to the subject matter hereof.

10. <u>Modifications</u>.  This Settlement Agreement cannot and shall not be modified, amended or supplemented except by written agreement executed by all the Parties.

11. <u>Miscellaneous</u>.

   a. Each of the Parties has participated in the drafting and negotiation of this Settlement Agreement, with full opportunity to confer with their respective counsel. For all purpose, this Settlement Agreement shall be deemed to have been drafted jointly by the Parties hereto.

   b. This Settlement Agreement may be executed in counterparts, each of which shall be deemed to be an original. A copy of this Settlement Agreement shall be deemed to be valid and binding as if it was an original. The signature of any signatory to this Settlement Agreement may be executed through the use of facsimile transmission or by way of PDF as an attachment to an email, in which case the signature on this Settlement Agreement shall be effective as if an original signature were affixed hereto, and may be relied upon by the Parties hereto.

   c. The individuals who sign this Settlement Agreement on behalf of the Debtor and Pelmadulla respectively represent and warrant that each has been duly authorized to sign this Settlement Agreement and has the authority to bind the respective entity to the terms and conditions of this Settlement Agreement.

   d. Except as otherwise specifically provided for herein, nothing contained in this Settlement Agreement shall create any rights, remedies or defenses in favor of any person or entity that is not a Party to this Settlement Agreement.

   e. This Settlement Agreement shall inure to the benefit of and be binding on the heirs, successors and assigns of the Parties.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement or have caused this Settlement Agreement to be executed by their duly authorized officer as of the date first above written.

WANSDOWN PROPERTIES CORPORATION N.V.

By:

RUBIN LLC
*Counsel to the Debtor*

By: /s/ Paul A. Rubin / HVH
Paul A. Rubin
Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054

PELMADULLA STIFTUNG, VADUZ
By: /s/
Name: Dr. Guido Meier    Dr. Werner Keicher
Title: Director          Director

6